ADA DAVIS, DEPENDENT WIDOW OF TOM DAVIS, DECEASED EMPLOYEE, v. NORTH STATE VENEER CORPORATION AND AMERICAN MUTUAL LIABILITY INSURANCE COMPANY.

(Filed 27 January, 1931.)

**1. Master and Servant F b—Definition of injury "arising out of and in the course of the employment."**

The course of employment within the meaning of the Workmen's Compensation Act refers to the time, place and circumstance under which an accident causing the injury takes place, and an accident is received in

the course of employment if the employee is engaged in a duty he is employed and paid to perform, or which is reasonably incident thereto, and an accident arises "out of the employment" when there exists a causal connection between the two, or the accident could be reasonably contemplated as risk incident to or involved in the employment.

**2. Same—In this case held: injury did not arise in the course of employment and was not compensable under the Workmen's Compensation Act.**

Where a mill owner permits an employee to sleep in the mill at night, and there is evidence that the employee voluntarily and without orders assumed to go for the superintendent at his home at night after his duties had ceased, and was struck and killed by an automobile: *Held,* the injury was not received through an accident in the course of the employment within the meaning of the Workmen's Compensation Act, and the fact that he punched the time clock before attempting his errand does not vary the result.

**3. Same—Burden is on employee to prove that extraneous acts were within course of employment from custom or use.**

In order to bring extraneous acts of an employee within the course of his employment, as contemplated in the Workmen's Compensation Act, by habit or custom, the character of proof must be clear and convincing as to the antiquity of the custom or use, and also of its duration and universality in the location where it is claimed to exist.

Civil action, before *MacRae, Special Judge,* at July Term, 1930, of Davidson.

This was a proceeding before the North Carolina Industrial Commission for compensation for the death of plaintiff's intestate. The facts are clearly and accurately stated by Commissioner Dorsett, as follows:

"Tom Davis worked on the day shift for the North State Veneer Corporation. He lived in Lexington, North Carolina, and worked in Thomasville, North Carolina. He usually went home over each week end, when his wife would cook sufficient rations for his subsistence the following week. Tom Davis, the deceased, as above stated, worked in the day time and slept on the premises of his employer at night. The employer knew that Tom was sleeping on the premises and did not object to this. Tom was permitted to sleep there for his own convenience, the employer not expecting any service from Tom in exchange for allowing him to sleep there.

On the evening of the accident it seems that a piece of machinery in the plant of the employer broke down about nine o'clock, and as was customary on the night of the breakdown none of the bosses or superintendents were present at the plant. The custom was for the superintendent to give what orders he desired followed before going home for the day and the night employees were expected to carry out such orders. When the machinery broke down the deceased, knowing where the foreman lived, volunteered to go and get said foreman to repair the ma-

chinery since none of the employees on the job that night knew anything about repairing that certain piece of machinery which had broken down. Tom had no orders to go for the foreman, but went voluntarily. The evidence is that had certain machinery not been repaired at once certain veneering would have been ruined. It is also in evidence that on two or three occasions prior to this occasion Tom Davis had gone to the home of the foreman to report certain breakdowns and to show other employees who had to see the foreman on business where the said foreman lived. It is also in evidence that for such trips Tom never received any remuneration. He never asked for any. On the evening of the fatal accident, however, it seems that Tom, before leaving the plant for the home of the foreman, punched the time clock and then set out on his journey, and while going to the home of the foreman he suffered an accident when an automobile driven by a hit-and-run driver struck him. Tom was found around midnight by the foreman to whose home he was going, and another gentleman. He was carried to High Point to a hospital where he died some two or three days later."

Upon the foregoing facts the Commission found that the employee was injured "in the course of his employment" and made an award. The defendant appealed to the Superior Court, and the trial judge approved the award, from which judgment the defendant appealed.

*W. O. Burgin and Walser & Walser for plaintiff.*
*Manly, Hendren & Womble for defendant.*

BROGDEN, J. Was the death of plaintiff occasioned "by accident arising out of and in the course of the employment?"

"In order that compensation may be due the injury must arise out of and also be received in the course of the employment—neither alone is enough. It is not easy . . . to give comprehensive definition of these words . . . an injury is received, in the course of the employment when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of the employment' when there is . . . a causal connection between the conditions under which the work is required to be done and the resulting injury. . . . If the injury can be seen . . . to have been contemplated by a reasonable person familiar with the whole situation . . . then it 'arises out of the employment.' The causative danger must be peculiar to the work and not common to the neighborhood." *Chief Justice Rigg* in *McNicol's case,* 102 N. E., 697, N. C. Industrial Commission Report, 131. Similar definition occurs in the case of *Wirta v. North Butte Mining Co.,* 210 Pac., 332, 30 A. L. R., 964, in these words: "The words 'in the course of an employment' refer to the time, place, and circumstances under

which the accident took place, and an accident arises 'in the course of the employment' if it occurs while the employee is doing the duty which he is employed to perform." This Court in *Conrad v. Foundry Co.,* 198 N. C., 723, 153 S. E., 266, adopted the following definition: "An accident arising 'in the course of' the employment is one which occurs while 'the employee is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time to do that thing' or one which 'occurs in the course of the employment and as the result of a risk involved in the employment, or incident to it, or to conditions under which it is required to be performed.'" See, also, *Harden v. Furniture Co.,* 199 N. C., 733; *Phifer v. Foremost Dairy, ante,* 65. See, also, Annotation 6 A. L. R., 1247; 30 A. L. R., 972.

The deceased employee was a laborer at the veneer plant of defendant. The record does not disclose the specific nature of his duties, but he worked on the day-shift and his day's work came to an end at 5:34. The record does not disclose that he was working at the drykiln or during working hours charged with any duty with respect to the engine or the machinery in the plant. His time card showed a punch at 9:32 at night, indicating that the deceased employee was expecting to receive pay for his services in making the trip to the home of the foreman in order to notify him that the engine had broken down and would not run. There was no request made by any person in authority, or even by a fellow employee that the deceased should make the journey to the home of the foreman. At the time of his injury he was some distance beyond the home of the foreman. Under the facts set out in the record it is manifest that the injury did not occur during working time or at the place where the employee was assigned to work, nor did the injury occur in the performance of any duty incidental to the work assigned by the employer. Upon these facts and circumstances, we are of the opinion that the plaintiff is not entitled to recover.

It is suggested in many cases that an employee should be allowed to recover where he was performing some act in an emergency involving the safety of life or limb of a fellow employee or other person about the premises, and even when endeavoring to protect and safeguard the property of the employer. Many of the emergency cases are annotated in 30 A. L. R., *supra.* An examination of these cases will disclose that emergencies have been interpreted as unforeseen events happening in and about the premises which threaten or menace life, limb, or destruction of property. These cases cover the field of injuries resulting from fires, riots, explosions, drowning, shooting and other events portending immediate peril and foreboding serious injury or destruction. The breakdown of a piece of machinery or its failure to function could

not be reasonably classified as an emergency. Certainly any sort of machinery trouble would entail some degree of loss upon the employer.

The claimant relies upon *Grieb v. Hammerle,* 118 N. E., 805, 7 A. L. R., 1075. The Court said: "The argument is made that the injury did not arise out of or in the course of the servant's employment. I think that is too narrow a view. If Grieb had been injured during working hours, it would make no difference that his service was gratuitous. If the service was incidental to the employer's business and was rendered at the employer's request, it would be part of the employment within the meaning of this statute. Any other ruling would discourage helpful loyalty. . . . *Pro hac vice,* by force of custom or request, the employment is enlarged." In the *Grieb case* the injured employee was requested by the employer to deliver certain boxes of cigars to a customer, and in attempting to make the delivery he fell down stairs and was killed. An analysis of the case will disclose that the recovery was based upon the request of the employer to deliver the cigars.

In the case at bar there was no request and no evidence of custom. It is true that there was evidence that the deceasd employee had notified the foreman of the brakedown on one or two previous occasions. A witness testified: "All I remember is him going once before, something like that, may be twice." In order to impose liability by virtue of custom the character of proof must be clear and convincing as to the antiquity, duration, and universality of the usage in the locality where it is claimed to exist. *Penland v. Ingle,* 138 N. C., 457, 50 S. E., 850; *Crown Co. v. Jones,* 196 N. C., 208, 145 S. E., 5.

Reversed.