ERNEST HOYLE, Guardian ad Litem for Totisha Shannette Mason and Gerald Allen Mason, Jr., Minor Children of Gerald Allen Hoyle, Deceased, Employee, Plaintiff v. ISENHOUR BRICK & TILE COMPANY, Employer and LIBERTY MUTUAL INSURANCE COMPANY, Carrier, Defendants

No. 82A82

(Filed 13 July 1982)

**Master and Servant § 60— workers' compensation—using forklift contrary to prior orders in furtherance of employer's business—compensable accident**

When there is a rule or a prior order and the employee is faced with the choice of remaining idle in compliance with the rule or order or continuing to further his employer's business, no superior being present, the employer who would reap the benefits of the employee's acts if successfully completed should bear the burden of injury resulting from such acts and under such circumstances, engaging in an activity which is outside the narrow confines of the employee's job description, but which is reasonably related to the accomplishment of the task for which the employee was hired, does not ordinarily constitute a departure from the scope of employment. Therefore, the Industrial Commission erred in determining decedent's accident did not arise out of and in the course of the deceased employee's employment since the evidence disclosed that an employee, who had been previously prohibited from using a forklift, was faced with the choice of abandoning the furtherance of his employer's business, in that he was unable to continue stacking culled bricks, or acting in contravention of a previous order, and there was no superior present to forbid or permit his operation of the forklift. The employee's election to disobey a prior given order did not break the causal connection between his

Hoyle v. Isenhour Brick and Tile Co.

employment and his fatal injury since the disobedient act was reasonably related to the accomplishment of the task for which he was hired.

Justice MEYER dissenting.

Justices COPELAND and CARLTON join this dissenting opinion.

APPEAL by guardian ad litem Ernest Hoyle on behalf of the minor children of deceased Gerald Allen Hoyle in an action seeking death benefits under G.S. 97-38 and -39. The Deputy Commissioner's award denying benefits was adopted by the full Industrial Commission and affirmed by a split panel of the Court of Appeals, *Vaughn, J.*, with *Wells, J.*, concurring, and *Martin (Harry C.), J.*, dissenting. The appeal is pursuant to G.S. 7A-30(2).

The evidence before the Commission was to the effect that deceased had been employed by Isenhour Brick & Tile as a cull brick stacker. He removed imperfect bricks from a conveyor after which he would "band them up, like a box." A forklift operator would then remove the culls.

Deceased was killed when a forklift he was operating overturned, pinning him underneath it.

The employer had a rule against unauthorized personnel operating forklifts. Supervisory personnel who testified at the hearing explained that the employer had such a rule because of the dangerous propensities of forklift machinery. Deceased was not authorized to operate a forklift. Several employees testified that unauthorized personnel used the forklifts and the supervisors admitted this, although one noted that he did not recall ever finding an unauthorized employee operating a forklift after being warned against the practice.

On two occasions prior to the accident, one occurring several months before and another occurring about two weeks before, deceased was observed by different supervisors using a forklift to move his bricks. On each occasion the supervisor verbally reprimanded deceased, advised him of the rule against operating forklifts without authorization, and warned him that if caught again he would be disciplined, either suspended or terminated. Neither of the supervisors was aware until after the fatal accident that the other had previously caught deceased operating a forklift.

On the night of the accident, the forklift operator who was to have moved deceased's stack of cull bricks was busy helping another employee. The forklift operator, Larry Rollins, testified at the hearing that although "[t]here was not really any limit as to how many culls he [deceased] could stack out there before I moved the culls," on that particular night, [deceased] *"didn't have no more place to put them."* [Emphasis added.] The forklift operator described deceased's cull stacking operation as follows: "He'd band them up, *like a box*, like you stack them culls in there and you band them up. *The box was full* [that night]." [Emphasis added.] When it became necessary to move the stack of culls, Rollins, being otherwise occupied, told deceased he could use the forklift to move the bricks. Rollins admitted he had no authority to let deceased use his forklift, but observed, "No one had ever told me not to let [deceased] use the forklift." No supervisor was present on the night of the accident.

Deceased loaded the stack of cull bricks and moved them away from his work station. He conversed with another forklift operator as they drove along a paved road to an area where bricks were stacked in storage. The forklift operator deposited his load and went back for another. When he returned he found deceased pinned under the overturned forklift, and the stack of cull bricks deceased had been carrying was stacked in an area reserved for good bricks.

The Deputy Commissioner found that it was not deceased's job to operate a forklift; that the employer had a rule, of which deceased was aware, prohibiting the operation of forklifts by unauthorized personnel; that the reason for the rule was the dangerous propensities of forklift machinery; that deceased had been warned on two prior occasions, by different supervisors, not to operate forklifts; that deceased's operation of the forklift on the night of the accident was against his instructions; and that the deceased was not at the place he was employed to work when the accident occurred. The Deputy Commissioner thereupon determined that, "The accident giving rise to this claim did not arise out of and in the course of the deceased employee's employment." The denial of benefits based thereon was upheld by the full Commission.

The Court of Appeals held that deceased's operation of the forklift, after prior warnings and in the face of rules against the

practice, constituted a departure from the job for which deceased had been employed and affirmed the award of the Industrial Commission denying death benefits. Judge Harry C. Martin dissented, asserting that the actions of deceased had not been "so extreme as to break the causal connection between his employment and his death."

*Thomas A. McNeely for plaintiff-appellant.*

*Hedrick, Feerick, Eatman, Gardner & Kincheloe, by J. A. Gardner, III, for defendant-appellees.*

BRANCH, Chief Justice.

The parties stipulated in instant case that the employee "was injured by accident on June 9, 1978," and that he "died on the same date as a result of those injuries."

Our Workers' Compensation Act affords compensation only for those injuries resulting from accidents "arising out of and in the course of the employment . . . ." G.S. 97-2(6). The issue of whether a particular accident arises out of and in the course of employment is a mixed question of fact and law, and this Court's review is limited on appeal to the question of whether the findings and conclusions are supported by competent evidence. *Gallimore v. Marilyn's Shoes,* 292 N.C. 399, 233 S.E. 2d 529 (1977); *Cole v. Guilford County,* 259 N.C. 724, 131 S.E. 2d 308 (1963). While often interrelated, the concepts of "arising out of" and "in the course of" employment are distinct elements, both of which must be established before compensation may be allowed. *Gallimore v. Marilyn's Shoes, supra.* The term "arising out of" refers to the origin or cause of the accident, and the term "in the course of" refers to the time, place, and circumstances of the accident. *Gallimore v. Marilyn's Shoes, supra; Matthews v. Carolina Std. Corp.,* 232 N.C. 229, 60 S.E. 2d 93 (1950); *Davis v. Veneer Corp.,* 200 N.C. 263, 156 S.E. 859 (1931).

> "An accident arising 'in the course of' the employment is one which occurs while 'the employee is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time to do that thing'; or one which 'occurs in the course of the employment and as the result of a risk involved

Hoyle v. Isenhour Brick and Tile Co.

in the employment, or incident to it, or to conditions under which it is required to be performed.'" *Conrad v. Foundry Company,* 198 N.C. 723, 153 S.E. 266.

In *Perry v. Bakeries Co.,* 262 N.C. 272, 136 S.E. 2d 643, Moore, J., speaking for the Court, said:

> " 'The term "arising out of employment," it has been said, is broad and comprehensive and perhaps not capable of precise definition. It must be interpreted in the light of the facts and circumstances of each case, and there must be some causal connection between the injury and the employment.' To be compensable an injury must spring from the employment or have its origin therein. An injury arises out of the employment when it is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so that there is some causal relation between the injury and the performance of some service of the employment. An accident arises out of and in the course of the employment when it occurs while the employee is engaged in some activity or duty which he is authorized to undertake and which is calculated to further, directly or indirectly, the employer's business." (Citations omitted.)

*Clark v. Burton Lines,* 272 N.C. 433, 437, 158 S.E. 2d 569, 571-72 (1968). As the last quoted authority suggests, the two tests, although distinct, are interrelated and cannot be applied entirely independently. Rather, they are to be applied together to determine the issue of whether an accident is sufficiently work-related to come under the Act. Since the terms of the Act should be liberally construed in favor of compensation, deficiencies in one factor are sometimes allowed to be made up by strength in the other. *Watkins v. City of Wilmington,* 290 N.C. 276, 225 S.E. 2d 577 (1976); *Lee v. Henderson & Assocs.,* 284 N.C. 126, 200 S.E. 2d 32 (1973); *Kellams v. Metal Products,* 248 N.C. 199, 102 S.E. 2d 841 (1958); *Hardy v. Small,* 246 N.C. 581, 99 S.E. 2d 862 (1957).

Professor Larson, in his treatise on Workers' Compensation Law, addresses the general situation before us and is quoted by both the majority and the dissent in the Court of Appeals in support of their respective positions. In order to place these quotations in context and to get a better understanding of the position Larson posits, we quote the treatise more fully:

Hoyle v. Isenhour Brick and Tile Co.

It has already been observed that the modern tendency is to bring within the course of employment services outside regular duties performed in good faith to advance the employer's interests, even if this involves doing an unrelated job falling within the province of a co-employee. This, of course, assumes that no prohibition is thereby infringed. But if the unrelated job is positively forbidden, all connection with the course of the claimant's own employment disappears, for he has stepped outside the boundaries defining, not his method of working, but the ultimate work for which he is employed. Decisions on this topic have consistently denied compensation on these facts when the extraneous job was in no sense auxiliary to claimant's own task.

\*    \*    \*

It frequently happens that an employee will have his work stopped by some clogging, lack of oil, or disrepair of his machine. Quite commonly, also, there will be a company rule forbidding the operator to attempt to deal with the situation, and requiring him to wait until the specialists—whether oilers, electricians, or other repairmen—arrive on the scene. Sometimes the operator decides he can make the repair without the delay involved in calling the experts, and sometimes he gets hurt because he underestimated the expertness required or overestimated his own versatility. Now, the question is: has he departed from the course of his employment? He has attempted another person's job in violation of instructions. Yet the fact remains that he is attempting to get his own work done, although in forbidden fashion. Cases presenting these facts have gone both ways, depending on whether attention was focused on the fact that the job belonged to another or the fact that the action was a method of advancing the employer's work.

\*    \*    \*

As a matter of compensation theory, it is quite permissible to treat the incidental invasion of another employee's province as merely a forbidden route on the main journey to the ultimate objective, the performance of claimant's work. Realistically, in some circumstances it is quite unfair to the claimant to penalize him for his well-meant short-cut, since in

the everyday operation of a factory it is not uncommon and is probably often to the interest of the employer for employees to take direct action rather than "going through channels" when confronted with some minor adjustment which technically they are not permitted to undertake. On the other hand, it is equally true that risk of industrial accident may be increased when amateur electricians and repairmen take upon themselves dangerous jobs for which they have no qualifications. Most of the cases, however, seem to be of the former sort.

1A A. Larson, The Law of Workmen's Compensation § 31.14(a) & (b) (1979).

The above quotation from Larson, while instructive is not dispositive of the question before us. It speaks in terms of *unrelated* jobs. The question of whether deceased's operation was or was not related to the job for which he was hired is at the heart of this appeal. Moreover, the statement about forbidden activities is not fully in accord with our case law. Our decision in this case must be guided by the decisions of this Court construing our own Worker's Compensation Act.

Several opinions of this Court have dealt with situations similar to the facts of instant case. While the older cases often viewed acts outside the employee's job description as being outside the scope of the employment, the more recent cases have not viewed minor deviations from the confines of a narrow job description as an absolute bar to the recovery of benefits, even when such acts were contrary to stated rules or to specific instructions of the employer where such acts were reasonably related to the accomplishment of the task for which the employee was hired. We examine these cases, five of which were cited and discussed in the Court of Appeals' opinion in instant case.

In *Teague v. Atlantic Co.*, 213 N.C. 546, 196 S.E. 875 (1938), an employee was killed attempting to ride a conveyor belt intended to convey empty crates from the basement of the employer's plant to the first floor. Stairs were provided for this purpose and generally used by the employees. Deceased employee had been instructed by his foreman not to ride the conveyor. In a Per Curiam opinion, citing no authority, the Court held that deceased had disobeyed his orders and exceeded the scope of his employment

by attempting a hazardous feat for the thrill of it or for his own convenience and affirmed the Industrial Commission's denial of death benefits.

That same year the Court affirmed the Industrial Commission's denial of death benefits to a painter who drowned in the Catawba River. *Morrow v. Highway Commission*, 214 N.C. 835, 199 S.E. 265 (1938). The deceased had dropped his paintbrush from a bridge he was painting. His foreman was present and ordered deceased not to go into the water to retrieve the brush. Deceased jumped in the river and was drowned. In a Per Curiam opinion of less than fifty words, and again citing no authority, the Court affirmed the Industrial Commission's conclusion that the accident did not arise out of the employment.

In *Taylor v. Dixon*, 251 N.C. 304, 111 S.E. 2d 181 (1959), plaintiff was hired to cut down trees in a logging operation. On the day of the accident, he refused to cut trees and announced he was going to drive the tractor instead. Plaintiff was ordered by his employer to get off the tractor, to which he replied, "Old man, I will get down and whip your * * * if you don't hush up. I know what I am doing * * *." *Id.* at 304, 111 S.E. 2d at 182. The employer stated in the hearing that, "He [the injured employee] was employed to run the chain saw — not to operate the tractor * * * I didn't hire him as a tractor driver." *Id.* at 305, 111 S.E. 2d at 182. This Court reversed an award of compensation on the ground that the Industrial Commission erred in failing to find facts concerning whether plaintiff's operation of the tractor in defiance of the orders of his employer to the contrary constituted a departure from the employment sufficient to take plaintiff out of the Act. The Court quoted 1 Larson's Workmen's Compensation Law 463 to the effect that "if . . . the *unrelated job* is *positively forbidden*, all connection with the claimant's own employment disappears, for he has stepped outside the boundaries defining, not his method of working, but the ultimate work for which he is employed." [Emphasis added.] *Id.* at 308, 111 S.E. 2d at 185.

In *Hartley v. Prison Dept.*, 258 N.C. 287, 128 S.E. 2d 598 (1962), plaintiff, a prison guard, was called to relieve another guard in a nearby tower. To get to the tower, plaintiff had to walk 100 yards to a gate, and 100 yards back to a point just on the other side of the fence from where he was when called. In-

stead of walking the 200 yards to use the gate, he tried to climb the fence, fell, and was hurt. It was *against prison rules* for the guards to climb the fence.

Reasoning that the employee's purpose for climbing the fence was to relieve the guard on duty in the next tower, which was the thing he had been ordered to do, the Court noted that, although plaintiff had been negligent to climb the fence, "not even gross negligence is a defense to a compensation claim." *Id.* at 289, 128 S.E. 2d at 600. The Court went on to state, "Only intoxication or injury intentionally inflicted will defeat a claim," *id.*, and observed that even the willful violation of an employer's rule does not defeat compensation, but may result in a ten percent reduction *if* the rule has been approved by the Industrial Commission. G.S. 97-12. The Court then affirmed the award of compensation, stressing that the purpose of the Worker's Compensation Act was "to eliminate the fault of the workman as a basis for denying recovery." *Id.* at 290, 128 S.E. 2d at 600.

The most recent case to deal with facts similar to those in the case *sub judice* was *Hensley v. Carswell Action Committee,* 296 N.C. 527, 251 S.E. 2d 399 (1979). In *Hensley* the deceased was employed to cut weeds around a lake. He was specifically instructed not to go into the water. After finishing the job, he spotted an area he had missed. The supervisor who had ordered deceased not to go into the water was not then present. Against these prior orders, deceased attempted to wade across the lake to cut the weeds he had missed. He drowned.

The *Hensley* Court analyzed *Taylor, Morrow,* and *Teague* and characterized them as follows:

> *Taylor* actually deals with procedural rather than substantive matters; *Teague* involved dangerous thrill-seeking completely unrelated to the employment; and *Morrow* involved the performance of an obviously dangerous act in the face of an immediate and specific order not to do that very act.

296 N.C. at 531, 251 S.E. 2d at 401. Concluding that none of those three cases controlled, the Court followed *Hartley, supra,* holding that the deceased's disobedience of his supervisor's order was not such a departure from his employment as to destroy the causal connection between the accident and the employment. The Industrial Commission's award denying compensation was reversed.

In addition to the five cases cited and relied upon by the Court of Appeals in the majority and dissenting opinions filed below, we find four other cases instructive.

*Archie v. Lumber Co.*, 222 N.C. 477, 23 S.E. 2d 834 (1943), does not involve an employee stepping outside the bounds of his job description; yet it does provide the definitive answer to the question of whether prior orders or rules of the employer may constitute an absolute bar to the recovery of compensation. The case involved a deceased employee who had worked as a logger for defendant Lumber Company. Defendant provided its employees with a specially equipped "safety car" which took them to and from their work site along the company's railroad line. The company had a rule against employees riding in the log cars; nevertheless, on occasion employees would ride the log cars to get from the work site. Deceased employee had been specifically instructed not to ride the log cars. Apparently, on the day of the accident, the safety car was a little slow departing the work site to take the employees back to the camp. Deceased attempted to board a log car and was mortally injured.

This Court reversed the Superior Court's reversal of the Industrial Commission's award of benefits despite the deceased's violation of both a rule of his employer and a specific instruction warning him not to ride the log car. The Court held that denial of benefits was inconsistent with the intent of the Act to eliminate fault as a basis for determining compensation in industrial injury cases. The Court noted that the violation of an *approved* safety rule is covered in G.S. 97-12 and that the penalty for violation is a ten percent reduction and not a denial of compensation. In so holding, the Court expressly disapproved cases from other jurisdictions holding to the contrary as not in accord with the "proper interpretation" of the North Carolina Worker's Compensation Act.

In *Riddick v. Cedar Works*, 227 N.C. 647, 43 S.E. 2d 850 (1947), plaintiff was employed as a lumber stacker. He "had been warned to stay away from the saws" in defendant's lumber plant. On the day of the accident, plaintiff had been instructed to do some work in the vicinity of one of the saws. He undertook to help another employee saw a board at the nearby saw and was cut. This Court held that the employee's attempt to help with the

sawing operation, despite warnings to the contrary, did not constitute such a departure from his assigned work task as to defeat his claim for compensation.

In *Howell v. Fuel Co.*, 226 N.C. 730, 40 S.E. 2d 197 (1946), the employee was hired to sweep out coal cars after their contents had been dumped. He swept out one end of a coal car and was told to stand in a specified place of safety while other employees rolled the car forward on the tracks so that the other end of the car could be swept out. Contrary to these instructions, the employee went to the other, unprotected, side of the platform to wait for the car to be moved. When the coal was dumped, the hopper into which it was dumped collapsed. One of the boards from the hopper struck the employee, knocking him off the platform and resulting in injuries which proximately caused his death. The Court upheld the award of compensation reasoning that to hold otherwise would be "to say that an employee must step only where his work compels him to step; go only to the exact spot his duties require him to go. The rule of liberal construction will not permit such a narrow and restricted application of the law." *Id.* at 732, 40 S.E. 2d at 198.

*Parsons v. Swift & Co.*, 234 N.C. 580, 68 S.E. 2d 296 (1951), involves a deceased employee who had been specifically prohibited by company rule from operating a tractor. His job was to haul filler in a wheelbarrow. Upon finding a tractor blocking his path, the employee asked two tractor operators to move it. Both refused. The employee then attempted to move the tractor and was killed when the tractor rolled over crushing him. The Industrial Commission found that the employee was acting in furtherance of his employer's business in seeking to move the tractor and that the deceased employee had moved similar tractors on prior occasions in violation of the company's rule to the contrary. This Court held that the evidence supported the award of compensation and affirmed.

In *Guest v. Iron & Metal Co.*, 241 N.C. 448, 452, 85 S.E. 2d 596, 600 (1955), we find the following:

> Basically, whether plaintiff's claim is compensable turns upon whether the employee acts for the benefit of his employer to any appreciable extent or whether the employee acts solely for his own benefit or purpose or that of a third person.

Summarizing the legal principles gleaned from these pertinent cases, we find that thrill seeking which bears no conceivable relation to accomplishing the job for which the employee was hired moves the employee from the scope of his employment. *Teague v. Atlantic Co., supra.* Likewise, disobedience of a direct and specific order by a then present superior breaks the causal relation between the employment and the resulting injury. *Taylor v. Dixon, supra; Morrow v. Highway Commission, supra.* This is patently so; the employee's subjective belief concerning the advisability of his course of action becomes irrelevant since there would be no room for doubt as how best to serve his employer's interest in the face of the employer's direct and immediate order. Conversely, when there is a rule or a prior order and the employee is faced with the choice of remaining idle in compliance with the rule or order or continuing to further his employer's business, no superior being present, the employer who would reap the benefits of the employee's acts if successfully completed should bear the burden of injury resulting from such acts. Under such circumstances, engaging in an activity which is outside the narrow confines of the employee's job description, but which is reasonably related to the accomplishment of the task for which the employee was hired, does not ordinarily constitute a departure from the scope of employment. *Parsons v. Swift & Co., supra; Hensley v. Carswell Action Committee, supra; Hartley v. Prison Department, supra.*

Here all of the evidence discloses that the employee did *not* disobey a direct, immediate, and specific order by a then present superior not to operate the forklift. Rather the evidence shows that employee was faced with the choice of abandoning the furtherance of his employer's business or acting in contravention of a previous order. There was no superior present to forbid or permit his operation of the forklift. We are therefore of the opinion that employee's election to disobey a prior given order did not break the causal connection between his employment and his fatal injury if the disobedient act was reasonably related to the accomplishment of the task for which he was hired. We believe that that evidence disclosed that the employee's action was reasonably related to his employment. The single statement in the record to which defendant-employer points to support a contrary conclusion does not in fact support the employer's position. The authorized

forklift operator testified, "[t]here was not really any limit as to how many culls he [deceased] could stack out there before I move the culls." In the next breath, the witness testified that deceased "didn't have no more place to put the cull bricks" and that "the box was full." When taken in context, the first statement obviously was directed to the forklift operator's job description and does not suggest that the stacking area was unlimited. All the competent evidence tended to show that deceased could not continue the task for which he was hired until the bricks were removed. Thus, the removal of the bricks was reasonably related (indeed necessary) to the accomplishment of the task for which deceased had been hired.

Because of their striking factual similarity, we emphasize the compelling authority in *Hensley v. Carswell Action Committee, supra,* and *Parsons v. Swift & Co., supra.* In both *Hensley* and *Parsons,* this Court held that the deceaseds were acting in the course and scope of their employment when fatally injured. In each case the Court, in finding for the plaintiff, based its decision on the fact that the employee was acting in furtherance of the employer's business, albeit in disobedience of the employer's rule or order.

It is neither the role of the Industrial Commission nor of this Court to enforce the employer's rules or orders by the denial of Worker's Compensation. Enforcement of rules and orders is the responsibility of the employer, who may choose to terminate employment or otherwise discipline disobedient employees. This Court will not do indirectly what the employer failed to do directly.

For the reasons stated, we hold that the Industrial Commission erred in concluding that deceased's injury did not arise out of and in the course of his employment.

This case is reversed and remanded to the Court of Appeals with direction that it be remanded to the Industrial Commission for entry of an award consistent with this opinion.

Reversed and Remanded.

Justice MEYER dissenting.

I must respectfully dissent. The majority pays only lip service to the well established rule that this Court's review is limited on appeal to the question of whether the findings and conclusions are supported by competent evidence. This is not a case where the *only* evidence supports one result, and, where, if that evidence is disbelieved, we are left with a record devoid of *any* competent evidence to support the findings and conclusions. See, for example, *Taylor v. Cone Mills Corporation*, --- N.C. ---, --- S.E. 2d --- (filed this date). I cannot agree with the majority that there is no real conflict in the evidence. There is. The witness Rollins testified:

> I would ordinarily take out the culls and the dump pads with the forklift. I would take out the culls that Pee Wee was stacking there. He stacked culls right outside the building. *There was not really any limit as to how many culls he could stack out there before I moved the culls.*
>
> On this particular night when I went to see John Shaw, I let Pee Wee borrow my forklift to take out the culls he had stacked. *He didn't have no more place to put them.* In answer to your question where were they stacked, like a box. He'd band them up, like a box, like you stack them culls in there and you band them up. *The box was full.* (Emphasis added.)

That the Commission may believe all, part of or none of what a witness says is such elementary law that no citation of authority is required. I find ample evidence to support the Deputy Commissioner's Award denying benefits which was adopted by the Full Commission and affirmed by the Court of Appeals. It is our duty to determine whether the findings and conclusions are supported by the record evidence before us—it is not our duty to assume the role of super fact-finder.

I am greatly concerned that the majority opinion has established the rule that no direct, specific order of prohibition by an authorized supervisor is effective unless that order is given immediately prior to an accident by the authorized supervisor who is present at the time of the accident. It requires little familiarity with present day industrial practices to know that it is totally impractical to have a supervisor present at all times.

Likewise, common sense dictates that an employee will seldom defy a direct order in the presence of the authorized supervisor who gave that order and accompanied it with a threat of termination of employment. It is far more likely to occur when the supervisor is not present. Here, the employer's authorized supervisors twice warned the employee not to use dangerous equipment for which he was not trained. These orders were presumably given for the benefit of the employee and his fellow employees and not solely for the benefit of the employer.

While the result in this case does not shock the conscience, the rule established here is likewise applicable to situations which would pose even greater danger to fellow employees and the public generally. I seriously question whether the result would have been the same had this employee been handling extremely toxic chemical wastes rather than bricks, or that the same result would have obtained had the equipment been a large overhead crane in a crowded industrial plant, or sensitive safety-related equipment in a nuclear-powered electric generation station. The principle is the same. The employer is usually in a better position than the employee to assess the danger of the use of dangerous equipment by untrained personnel to the employee, his fellow employees, and the public in general.

I do not believe that it is in the best interest of the employee, and certainly not the employer, that we leave employers with only the sanction of discharging or disciplining employees who defy direct orders given in the interest of plant safety. While the deterrent effect of loss of benefits might be questionable, we should not simply cast that benefit aside.

If the employee's activity in defying the employer's prohibition against his operation of dangerous equipment leaves him within the course and scope of his employment, the employer has in a real sense and in a substantial way lost the ability to protect his employees and others from the danger of, and himself from liability for such activity. I fear that the majority has placed far too much emphasis on the proposition that, even in defying repeated specific instructions, the employee here was still acting in furtherance of the employer's business. In my view, the fact that the employee is still acting in furtherance of his employer's business should not be the controlling factor. Certainly in the case

before us, and in virtually all cases, the employer would much prefer that the employee obey the supervisor's prohibitory orders than to receive such benefit as might grow out of the violation of those orders.

Unlike the majority, I do not consider this a case of enforcing an employer's rules or orders or doing indirectly what the employer failed to do directly. Nor is it a case where the employer failed to take adequate measures after discovery of the violation of his orders. The evidence here is clear that neither supervisor who ordered the employee not to drive the forklift was aware that the other had done so and therefore the employer could have had no way of knowing that the employee's violations were repeated.

I would vote to affirm the Court of Appeals.

Justices COPELAND and CARLTON join this dissenting opinion.