The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Kim L. Cramer and the briefs and oral arguments on appeal. Additionally, on 5 April 2000, the Honorable Michael F. Easley, Attorney General for the State of North Carolina, filed a Motion for leave to File an Amicus Curiae Brief on behalf of the North Carolina Department of Correction. This Motion was granted by Commissioner Thomas J. Bolch, and petitioners Amicus Curiae Brief has also been considered in reviewing this matter. The appealing party has shown good grounds to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioners holding and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 9 March 1999 as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act and an employee-employer relationship existed between the parties at all relevant times, such that the Industrial Commission has jurisdiction over the subject matter of this case, and the parties are properly before the Commission.
2. U S F G Insurance Company was the carrier on the risk.
3. The date of plaintiffs accident was 17 September 1997.
4. Plaintiffs average weekly wage was $307.50, yielding a compensation rate of $205.01.
5. The issues to be determined are:
a. Whether plaintiff as a prisoner on work release can bring a workers compensation claim for injuries received while on work release? If so, what benefits is plaintiff entitled to receive?
b. Whether defendants have carried the burden of proof in establishing the defense that plaintiffs injuries were the result of a willful intention to injure himself?
6. The parties stipulated twelve pages of Industrial Commission Forms marked as
Plaintiffs Exhibit A.
***********
Based upon the entire evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff was born on 1 February 1946, and is currently incarcerated in the North Carolina Department of Correction at its minimum security camp in Dallas, Gaston County.
2. By statute, the North Carolina Department of Correction is authorized to grant work release privileges to eligible inmates pursuant to G.S. 148-33.1. In this work release program, inmates may work in the public and private sectors and are viewed by the state as not working as agents of the state, but as individuals employed by a regular employer.
3. On 7 July 1997, plaintiff began working for defendant-employer, an outside employer, through this work release program. Plaintiff was assigned to work as a drop-ball operator in defendant-employers rock quarry. In this position, plaintiff operated a crane which dropped a large steel ball weighing approximately ten-thousand (10,000) pounds to break up stone and rocks to make gravel for highway projects.
4. Of plaintiffs income in the work release program, $62.50 was paid weekly to the Department of Correction to reimburse that Department for its cost of his room and board, $35.00 was retained by plaintiff for his personal use and the remainder, was sent to Raleigh where it was held by the state on behalf of plaintiff in the work release fund.
5. Plaintiff was initially employed at defendant-employers rock quarry in Polk County and was subsequently transferred to a rock quarry in Rutherford County. For the first two weeks of his employment, plaintiff was trained regarding the operation of the crane and worked with another employee. Plaintiff began working on a smaller crane, and was then trained on one of the larger ones. Plaintiff was instructed not to walk or move the crane while the drop ball was in a raised position.
6. Prior to 17 September 1997, plaintiff had been observed by Mr. Danny Seay, a supervisor, walking the crane while the drop ball was in the raised position. Mr. Seay had specifically instructed plaintiff prior to these occasions not to walk the crane with the drop ball raised off the ground, but rather to drag the ball while moving the crane. Walking the crane with the drop ball raised can cause the crane to tip over. The initial warning to plaintiff about this was sometime in August and the second warning came on the morning of the accident giving rise to this claim.
7. On 17 September 1997, plaintiff was operating one of the large cranes, a Northwest D-80 model, which he had operated for longer than a month. On the date in question, plaintiff attempted to walk the crane while the drop ball was raised. As plaintiff was attempting to maneuver the crane on this occasion, it tipped over.
8. As the crane fell, plaintiff was trapped inside the cab of the crane with his left leg pinned. Plaintiff sustained severe injuries, which resulted in the amputation of his left foot, rib fractures and an injury to his right shoulder.
9. Although plaintiff had previously been warned about moving the crane with the drop ball raised, he was not disobeying a direct or specific order from a then present supervisor when this incident occurred on 17 September 1997.
10. Defendants have failed to produce any credible evidence that plaintiffs actions on 17 September 1997 which resulted in his injuries were taken with the specific intention of injuring himself or others.
11. With regards to its work release program, the North Carolina Department of Corrections has established a policies and procedures manual containing specific regulations. Section .0308 of this manual provides that; "Every Work Release employer shall establish and maintain a current Workers Compensation Insurance Policy or other approved insurance program that compensates inmates for injury) as a condition for the employment of inmate participants. (See Plaintiffs Exhibit D). Additionally, Section 5 NCAC 2E .0703(b)(2)(A) of its policy manual provides that:"
(A) "Suitable employment shall require that:
(ii) The Employer must participate in an insurance program, preferable the Workers Compensation Program, which will compensate the inmate for injury by accident arising out of and in the course and scope of employment.
The only reasonable inference from this regulation is that in the formulation of its work release program, that the Department of Correction envisioned that injuries sustained by inmates in the course and scope of their employment with an outside employer would in fact be covered policies and plans maintained by these same outside employers.
12. An intent of the legislature in establishing the Workers Compensation Act was that employers would bear the costs of medical expenses incurred by employees who have sustained compensable injuries. Specifically, the North Carolina Workers Compensation Act provides in G.S. 97-25 that "Medical compensation shall be provided by the employer.
13. As the result of the incident on 17 September 1997, significant medical expenses were incurred in the treatment of plaintiffs injuries. The reasonable inference from G.S. 97-25 and the relevant Department of Correction policies is that these medical expenses incurred as the result of an injury sustained by an inmate in the work release program should be borne by the outside employer.
14. On 17 September 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
15. As the result of his injury by accident, plaintiff has been incapable of working in any form in the work release program or earning any wages since 17 September 1997.
16. On the date of his injury by accident, plaintiff was not being worked by the State or any subdivision thereof.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 17 September 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. G.S. 97-2(6).
2. Contributory negligence or bad judgment on the part of plaintiff is not a bar to recovery under the Act. Hartley v. Prison Dept.,258 N.C. 287, 128 S.E.2d 598 (1962).
3. Because the injury giving rise to this claim occurred when plaintiff, while incarcerated, was on work release, the holding inParker is not controlling and does not bar plaintiff from recovering under the act as an employee. Parker v. Union Camp Corp., 108 N.C. App. 85,422 S.E.2d 585 (1992).
4. On 17 September 1997, the date of his injury by accident, plaintiff was not being worked by the State or any subdivision thereof and, therefore, the provisions of G.S. 97-13(c) do not bar plaintiff from recovering workers compensation benefits from defendants.
5. Plaintiff was not disobeying a direct or specific order from a then present supervisor when this incident occurred on 17 September 1997 and, therefore, he may recover compensation for his claim. Hoyle v. IsenhourBrick Tile Company, 306 N.C. 248, 293 S.E.2d 196 (1982).
6. The evidence fails to establish that plaintiffs injuries were the result of a willful intention to injure himself or others, or the result of a willful breach of a safety rule or procedure adopted by defendant-employer. G.S. 97-12(3).
7. As the result of his 17 September 1997 injury by accident, plaintiff is entitled to have defendants pay to the Department of Correction temporary total disability compensation at the rate of $204.99 per week for the period of 17 September 1997 through the present and continuing, with said payments to be managed and appropriately distributed by the Department of Correction under its work release program. G.S. 97-29.
8. As the result of his 17 September 1997 injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses previously incurred or to be incurred, subject to the provisions of G.S.97-25.1. G.S. 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay the Department of Correction temporary total disability compensation at the rate of $204.99 per week for the period of 17 September 1997 through the present and continuing, with said payments to be managed and appropriately distributed by the Department of Correction under its work release program. This compensation is subject to the attorneys fee approved herein.
2. Defendants shall pay for all medical expenses incurred or to be incurred, subject to the provisions of G.S. 97-25.1. Defendants shall reimburse the Department of Correction for any payments it has made on behalf of plaintiff relating to his medical care resulting from this injury by accident.
3. A reasonable attorneys fee in the amount of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the accrued portion of the award, this fee shall be deducted from the amounts to be paid to the Department of Corrections and paid directly to counsel for plaintiff in a lump sum.
4. Defendants shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER