The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Margaret Morgan Holmes and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the holding of the Deputy Commissioner. However, pursuant to its authority under G.S. 97-85, the Full Commission modifies in part and affirms in part the Deputy Commissioners decision and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 14 April 1999 as:
 STIPULATIONS
1. On the date of the injury, the parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between plaintiff-employee and defendant-employer at the time in question.
3. Defendant-employer is self-insured and Cameron Harris and Company is the third party administrator.
4. The injury in question occurred on 16 September 1998.
5. The nature of the injuries sustained are a spiral fracture of the left tibia and an abrasion of the scalp.
6. Plaintiffs average weekly wage on 16 September 1998 was $387.59.
7. Plaintiff last worked for defendant-employer on 16 September 1998 and has not returned to work for defendant-employer or any other employer as of the date of the Pre-Trial Agreement, 30 March 1999.
 ***********
Based upon the entire evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff, who was thirty-one (31) years old at the time of the hearing before the Deputy Commissioner on 14 April 1999, began working at defendants plant through a temporary service in June 1998. In August 1998, plaintiff was hired by defendant as a permanent employee as a packer. Plaintiff worked in this capacity through the date of his injury on 16 September 1998.
2. Plaintiffs duties as a packer included packing yarn onto pallets, keeping the floor swept in his work area and cleaning pieces off the bobbins. Plaintiff worked twelve hour shifts from 7:00 a.m. to 7:00 p.m., alternating four days one week and three days the next.
3. Employees at defendants plant were not required to punch a time card and no one monitored the exact times the employees arrived and left. There were no regularly-scheduled breaks and no regularly scheduled times for meals. The employees took breaks when they were caught up with their work.
4. As part of his job as a packer, plaintiff had six winders to maintain. His shift supervisor, Ms. Donna Harris, routinely checked and recorded the poundage on computers at the winders at approximately 6:45 p.m. each night, and would reset the computers at this time for the next shift. The two or three clocks in the plant were not synchronized. Plaintiff was present at his workstation on 16 September 1998 when Ms. Harris came around to check the poundage and reset the computers.
5. After the poundage on the computers are checked and the computers reset for the next shift, plaintiff is required to finish bagging and boxing the cones of yarn before the end of his workday. These tasks require approximately ten (10) minutes to complete. There is no evidence in the record that plaintiff did not complete these and all other of his assigned duties on 16 September 1998.
6. Additionally, after completing his assigned duties on 16 September 1998, plaintiff went to the rest room to wash his hands and to clean the cotton dust and lint from himself prior to leaving work. Plaintiff testified that it was approximately 6:55 p.m. when he proceeded to the rest room on this date. Plaintiff and his mother testified that he did not leave work early on 16 September 1998. This testimony is found to be credible by the Full Commission.
7. Based upon the entire record of evidence, the Full Commission finds that plaintiff did not leave work early on 16 September 1998.
8. There are two main doors to defendants plant. A sidewalk leads directly from the front door to the street. However, plaintiffs job as a packer required him to work at the rear of defendants plant. Plaintiff and some of his co-workers usually left work through the rear door of the plant and onto an outside dock that abutted a parking lot located on defendants premises. A fence surrounds the area immediately outside the rear door. From the dock, plaintiff and other workers would then exit through a gate in the fence which led to the back of the parking lot which was also located on defendants premises. This gate is usually unlocked shortly before 7:00 p.m. Plaintiff was never informed that that leaving through the rear of the plant and the gate was not authorized.
9. Plaintiffs mother usually dropped him off at work in the morning and picked him up at night. Given plaintiffs normal route exiting work was through the rear door, plaintiffs mother would wait for him at the rear of the plant. On 16 September 1998 and on at least one other previous occasion, the gate leading to the rear of defendant-employers parking lot was locked when plaintiff reached it. Because the gate was locked on these occasions, plaintiffs mother was unable to wait for him at her usual location. Although there is no testimony as to the precise location where plaintiffs mother usually parked while waiting to pick him up from work, the reasonable inference from the evidence of record is that this location must have been inside the gate that was locked on the date in question.
10. On 16 September 1998, plaintiff was working a shift that ended at 7:00 p.m. On that date, he left work through the rear of the plant, as was his normal practice. As was the case on at least one prior occasion, the gate was locked and his mother was waiting outside of the gate. When this had occurred on 13 September 1998, the chain on the gate was loose enough so that plaintiff was able to spread the gate open and squeeze through the opening. Plaintiffs testimony that the gate was not unlocked by 7:00 p.m. on 13 September 1998 and on 16 September 1998 is accepted as credible.
11. On 16 September 1998, plaintiff was unable to squeeze through the gate and attempted to climb the gate in order to reach his mother. The gate in question is composed of wire mesh approximately six (6) feet high with three rows barbed wire on top. As he was scaling the fence, plaintiff slipped and fell to the ground. As the result of his fall, plaintiff sustained injuries, including a broken left leg.
12. The incident on 16 September 1998 that resulted in plaintiffs injuries took place on the premises of defendants business.
13. On 16 September 1998, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant.
14. The incident resulting in plaintiffs injuries was not motivated by thrill seeking on the part of plaintiff.
15. Defendant did not have a formal policy or rule regarding climbing the gate or fence. Defendants plant manager, Mr. Cohen Elgin, did testify that an employee seen climbing the gate would have been disciplined, and had a supervisor been present, plaintiff would not have attempted to climb the gate. However, because defendant did not have a rule or policy prohibiting plaintiff from climbing the locked gate to exit and given that plaintiff had never been ordered not to climb the gate, Mr. Elgins testimony about what would have happened if plaintiff had been seen is given no weight. Here, no supervisor was present at the time plaintiff attempted to climb the gate on 16 September 1998. Consequently, plaintiff was not disobeying a direct or specific order from a then present supervisor when he climbed the gate, fell and sustained his injuries.
16. As the result of his 16 September 1998 injury by accident, plaintiff has been unable to earn wages in his former position with defendant or in any other employment for the period of 17 September 1998 through the present and continuing.
17. On 16 September 1998, plaintiffs average weekly wage was $387.59, yielding a compensation rate of $258.52 per week.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 16 September 1998, plaintiffs average weekly wage was $387.59, yielding a compensation rate of $258.52 per week. G.S. 97-2(5).
2. As a general rule, injuries occurring while an employee travels to and from work do not occur in the course of employment and are therefore not compensable.See Barham v. Food World, 300 N.C. 329, 266 S.E.2d 676
(1980). However, an exception to this general rule has evolved in that an injury may be compensable when it occurred while an employee was going to and from work on the employers premises. Id. "The great weight of authority holds that injuries sustained by an employee while going to and from his place of work upon the premises owned or controlled by his employer are generally deemed to have arisen out of and in the course of the employment within the meaning of the Workmens Compensation Acts and are compensable provided the employees act involves no unreasonable delay. Bass v.Mecklenburg County, 258 N.C. 226, 128 S.E.2d 570
(1962). In the present case, plaintiffs injury occurred in the parking lot adjacent to the plant where he worked and the parking lot was a part of defendants premises.See Maurer v. Salem Co., 266 N.C. 381, 146 S.E.2d 432
(1966). Therefore, the incident occurring on 16 September 1998 constituted an injury by accident arising out of and in the course of plaintiffs employment with defendant. G.S. 97-2(6).
3. Contributory negligence or bad judgment on the part of plaintiff in attempting to leave by climbing the gate is not a bar to recovery under the Act. Hartley v.Prison Dept., 258 N.C. 287, 128 S.E.2d 598 (1962).
4. Because defendants general intent or purpose for having a gate and fence around the plant is irrelevant and plaintiff was not disobeying a direct or specific order from a then present supervisor when he climbed the gate and fell sustaining his injuries on 16 September 1996, he may recover compensation for his claim. Hoylev. Isenhour Brick Tile Company, 306 N.C. 248,293 S.E.2d 196 (1982).
5. Because plaintiff was on his employers premises and not thrill seeking when he climbed the gate, fell and injured himself on 16 September 1998, he may recover compensation for his claim. Id.
6. As the result of his 16 September 1998 injury by accident, plaintiff is entitled to have defendant pay ongoing total disability compensation at the rate of $258.52 per week for the period of 17 September 1998 through the present and continuing until such time as he returns to work or until further order of the Commission. G.S. 97-29.
7. As the result of his 16 September 1998 injury by accident, plaintiff is entitled to have defendant pay for all medical expenses incurred. G.S. 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay to plaintiff ongoing total disability compensation at the rate of $258.52 per week for the period of 17 September 1998 through the present and continuing until such time as he returns to work or until further order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorneys fee approved herein.
2. Defendant shall pay for all medical expenses incurred as the result of plaintiffs 17 September 1998 injury by accident.
3. A reasonable attorneys fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts owed to plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
4. Defendant shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER