**HARRIS v. THOMPSON CONTR'RS, INC.**

[148 N.C. App. 472 (2002)]

WAYMAN HARRIS, EMPLOYEE/PLAINTIFF v. THOMPSON CONTRACTORS, INC.,
EMPLOYER, AND UNITED STATES FIDELITY AND GUARANTY INSURANCE
COMPANY, CARRIER/DEFENDANTS

No. COA01-100

(Filed 5 February 2002)

**1. Workers' Compensation— employer-employee relationship—prisoner—work release employee**

The full Industrial Commission did not err in a workers' compensation case by determining that plaintiff employee's status as a prisoner did not bar recovery, because: (1) the parties entered into a stipulation stating that the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and that an employee-employer relationship existed between the parties at all relevant times; (2) the issue of whether plaintiff and defendant meet the statutory definitions of employee and employer need not be reached due to the stipulations; and (3) a prisoner employed through the work release program is not an agent or employee of the State prison system.

**2. Workers' Compensation— finding of fact—willful intention to injure or kill oneself**

The full Industrial Commission did not err in a workers' compensation case by failing to find that plaintiff employee prisoner's claim is barred under N.C.G.S. § 97-12(3) by his willful intention to injure or kill himself or that his award should be reduced under N.C.G.S. § 97-12 by ten percent based on plaintiff's willful breach of a rule or regulation adopted by the employer including plaintiff's walking the crane with the drop ball raised, because: (1) the negligence of the employee does not disbar him from compensation for an injury by accident arising out of and in the course of his employment; (2) there was no evidence that would show plaintiff willfully intended to injure himself or someone else; and (3) there is no evidence the employer's rule regarding the movement of the crane with the drop ball raised off the ground was ever reduced to writing.

**3. Workers' Compensation— employee not disobeying a direct or specific order from supervisor at time of accident**

The full Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee prisoner was not disobeying a direct or specific order from a then present

supervisor at the time of the accident, where (1) the superinten-
dent testified that at the time of the accident there was not any-
one standing beside plaintiff or anyone standing there watching
him the entire time; (2) plaintiff was hired to work as a drop ball
operator; and (3) plaintiff was operating the crane at the time of
his accident, which is a duty he was hired to perform.

Appeal by defendants from Opinion and Award entered 24
October 2000 by the North Carolina Industrial Commission. Heard in
the Court of Appeals 5 November 2001.

*The Roberts Law Firm, P.A., by Joseph B. Roberts, III, and Scott
W. Roberts, for plaintiff-appellee.*

*Jones, Hewson & Woolard, by Lawrence J. Goldman, for
defendant-appellants.*

EAGLES, Chief Judge.

Thompson Contractors, Inc. and United States Fidelity and
Guaranty Insurance Company ("defendants") appeal from an Opinion
and Award for the Full Commission awarding Wayman Harris ("plain-
tiff") workers' compensation benefits. Plaintiff was a Department of
Corrections prisoner on work release when he was injured working
for Thompson Contractors, Inc. ("Thompson"). After careful consid-
eration of the briefs and record, we affirm.

Plaintiff is serving a life sentence for murder and has been incar-
cerated with the North Carolina Department of Corrections for
approximately 25 years. Plaintiff began working through the work
release program in 1992. On 7 July 1997, Thompson employed plain-
tiff to work as a drop ball operator at their Mill Spring quarry in Polk
County. As a drop ball operator, plaintiff operated a crane that low-
ered a ball from the boom to break up rocks. Plaintiff had not oper-
ated a crane before his employment with Thompson. During August
1997, Thompson reassigned plaintiff to work at Miller Creek quarry in
Rutherford County.

Plaintiff had operated a "D-25" model crane at the Mill Spring
quarry. This crane was "much smaller" than the Northwest "D-80"
crane that plaintiff operated at the Miller Creek quarry. The "D-80"
crane weighed approximately 80 tons and the drop ball weighed
approximately 10,000 pounds. The "D-80" crane that plaintiff oper-
ated was originally manufactured as a shovel crane and subsequently

modified. The "stick and the bucket was taken off of it" and "the boom was extended to make it into a crane boom." The boom is the arm that extends off the crane which can be moved up and down. The crane is on two tractor treads which move the crane forward, backwards, right and left. The crane with the boom can rotate 360 degrees on the tractor treads.

On 17 September 1997, plaintiff was operating the "D-80" crane at the Miller Creek quarry. Plaintiff was "walking" the crane, which is moving the crane on its tractor treads, to another area of the quarry. While "walking" the crane, plaintiff contends that the cabin filled with smoke. As he got up to check on the source of the smoke, the crane toppled over trapping plaintiff underneath. Defendants contend that there was no smoke or fire in the cabin and the crane toppled due to plaintiff "walking" the crane with the boom and drop ball raised.

Plaintiff lost his left foot in the accident and suffered shoulder, rib and leg injuries. After the accident, plaintiff's left leg was amputated below the knee.

After the accident, plaintiff's claim for workers' compensation benefits was denied. Plaintiff requested a hearing which was held before Deputy Commissioner Kim L. Cramer on 9 March 1999. Deputy Commissioner Cramer denied plaintiff benefits in an Opinion and Award filed 29 October 1999. Plaintiff appealed for review and the matter was heard by the Full Commission. In its Opinion and Award filed 24 October 2000, the Full Commission reversed the Deputy Commissioner's holding and awarded plaintiff benefits. Defendants appeal.

Defendants raise three issues on appeal. Whether the Full Commission erred in: (1) its determination that plaintiff's status as a prisoner did not bar recovery; (2) failing to find that plaintiff's claim is barred by his willful intention to injure or kill himself; and (3) its application of *Hoyle v. Isenhour Brick and Tile Co.*, 306 N.C. 248, 293 S.E.2d 196, *reh'g denied*, 306 N.C. 565 (1982).

"On appeal from an award of the Industrial Commission, the scope of our appellate review is limited to two questions: (1) whether the Commission's findings of fact are supported by competent evidence in the record; and (2) whether the findings of fact justify the Commission's conclusions of law." *Peagler v. Tyson Foods, Inc.*, 138 N.C. App. 593, 597, 532 S.E.2d 207, 210 (2000). "This is true even when

there is evidence that would support contrary findings." *Goff v. Foster Forbes Glass Div.*, 140 N.C. App. 130, 133, 535 S.E.2d 602, 604 (2000).

[1] Defendants first contend that the Full Commission erred in determining that plaintiff's status as a prisoner did not bar recovery by plaintiff. We do not agree.

Defendants argue that G.S. § 97-13(c) bars recovery by plaintiff. It states that the "[Workers' Compensation Act] shall not apply to prisoners being worked by the State or any subdivision thereof, . . . ." G.S. § 97-13(c). Further, G.S. § 148-6 states that "such convicts so hired, or employed, shall remain under the actual management, control and care of the Department [of Correction] . . . ." In addition, a prisoner on work release "shall give his work-release earnings, less standard payroll deductions required by law, to the Department of Correction." G.S. § 148-33.1(f). Defendants contend that plaintiff was being worked by the State since plaintiff was to remain under the "actual management, control and care" of the Department of Correction ("DOC") and DOC received the prisoner's earnings.

Defendants also argue that no contract for hire existed between plaintiff and defendant Thompson. Defendants contend that a contract existed between defendant Thompson and the State, not between plaintiff and defendant Thompson. Defendants argue that the State assigned workers to Thompson and that Thompson had no say in the selection of work release employees. The Workers' Compensation Act defines employee as "every person engaged in an employment under any appointment or contract of hire . . . ." G.S. § 97-2(2). Defendants argue that this lack of contract for hire precludes plaintiff from being an employee which is necessary in order to claim benefits.

Defendants cite *Parker v. Union Camp Corp.*, 108 N.C. App. 85, 422 S.E.2d 585 (1992) for support. In *Parker*, the plaintiff suffered compensable work-related injuries and received workers' compensation benefits. *Id.* at 86, 422 S.E.2d at 585. While receiving benefits, the plaintiff was convicted and sentenced to prison. *Id. Parker* held that the plaintiff "was not entitled to receive workers' compensation benefits while in prison . . . ." *Id.* at 88, 422 S.E.2d at 587.

We hold that the Full Commission properly determined that plaintiff's status as a prisoner did not bar plaintiff from receiving benefits. The Full Commission found that:

2. By statute, the North Carolina Department of Correction is authorized to grant work release privileges to eligible inmates pursuant to G.S. § 148-33.1. In this work release program, inmates may work in the public and private sectors and are viewed by the state as not working as agents of the state, but as individuals employed by a regular employer.

The Full Commission concluded:

3. Because the injury giving rise to this claim occurred when plaintiff, while incarcerated, was on work release, the holding in Parker is not controlling and does not bar plaintiff from recovering under the act as an employee. Parker v. Union Camp Corp., 108 N.C. App. 85, 422 S.E.2d 585 (1992).

4. On 17 September 1997, the date of his injury by accident, plaintiff was not being worked by the State or any subdivision thereof and, therefore, the provisions of G.S. § 97-13(c) do not bar plaintiff from recovering workers' compensation benefits from defendants.

The Workers' Compensation Act is broad and covers all employers and employees unless they are specifically excluded.

From and after January 1, 1975, *every employer and employee, as hereinbefore defined and except as herein stated, shall be presumed to have accepted the provisions of this Article* respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of his employment and shall be bound thereby.

G.S. § 97-3 (emphasis added).

Here, plaintiff and defendants entered into a pre-trial agreement which was signed on 2 March 1999. Among other things, this agreement provided that: "1. Employee is Wayman Harris. 2. Employer is Thompson Contractors Inc. . . . 4. Employee-Employer relationship existed." The Opinion and Award by Deputy Commissioner Cramer and the Opinion and Award by the Full Commission contained similar stipulations. This stipulation found in both documents stated that "[t]he parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act" and an "employee-employer relationship existed between the parties at all relevant times . . . ." A stipulation regarding the employer-employee relation-

HARRIS v. THOMPSON CONTR'RS, INC.

[148 N.C. App. 472 (2002)]

ship is binding on the parties. *Sorrell v. Sorrell's Farms and Ranches, Inc.*, 78 N.C. App. 415, 417, 337 S.E.2d 595, 596 (1985).

Other jurisdictions have held that a claimant's status as a prisoner will not prevent the existence of an employer-employee relationship between a claimant-prisoner and a private employer. *See Benavidez v. Sierra Blanca Motors*, 922 P.2d 1205, 1211 (N.M. 1996) (holding that claimant's "status as an inmate does not preclude the existence of an employer-employee relationship for the purpose of receiving workers' compensation benefits."); *Courtesy Construction Corp. v. Derscha*, 431 So.2d 232, 232-33 (Fla. Dist. Ct. App. 1983) (holding that "[w]ork-released prisoners engaged to work in private enterprise, for compensation paid them by private businesses that are 'employers' in every practical sense of the word, are not excluded from [the Workers' Compensation Act]."); *Hamilton v. Daniel International Corp.*, 257 S.E.2d 157, 158 (S.C. 1979) (holding that defendant required to provide workers' compensation benefits due to the existence of an employer-employee relationship and that "[claimant] transcended his prisoner status and became a private employee entitled to workmen's compensation benefits."). However, due to the stipulations that exist here, we need not reach the issue of whether plaintiff and defendant Thompson meet the statutory definitions of employee and employer respectively.

Since the requisite employer-employee relationship exists, plaintiff will be covered by the Act unless the Act specifically excludes him. G.S. § 97-3. Employers and employees not covered by the Act are enumerated in G.S. § 97-13. Those excluded by this provision are: "(a) Employees of Certain Railroads." "(b) Casual Employment, Domestic Servants, Farm Laborers, Federal Government, Employer of Less than Three Employees." "(c) Prisoners." "(d) Sellers of Agricultural Products." G.S. § 97-13. Section "(c) Prisoners" states:

*This Article shall not apply to prisoners being worked by the State or any subdivision thereof,* except to the following extent: Whenever any prisoner assigned to the State Department of Correction shall suffer accidental injury or accidental death arising out of and in the course of the employment to which he had been assigned, if there be death or if the results of such injury continue until after the date of the lawful discharge of such prisoner to such an extent as to amount to a disability as defined in this Article, then such discharged prisoner or the dependents or next of kin of such discharged prisoner may have the benefit of

this Article by applying to the Industrial Commission as any other employee; . . . ."

G.S. § 97-13(c) (emphasis added). A prisoner being worked by the State is specifically excluded from the Act unless the disabling injury continues after the discharge of the prisoner or the prisoner suffers an accidental death. *Richardson v. N. C. Dept. of Correction*, 118 N.C. App. 704, 705, 457 S.E.2d 325, 326 (1995), *aff'd*, 345 N.C. 128, 478 S.E.2d 501 (1996).

G.S. § 148-26(a) provides that "[i]n exercising his power to enter into contracts to supply inmate labor as provided by this section, *the Secretary of Correction shall not assign any inmate to work under any such contract who is eligible for work release* as provided in this Article, . . . ." (Emphasis added.) In addition, "[n]o prisoner employed in the free community under the provisions of [G.S. § 148-33.1] shall be deemed to be an agent, employee, or involuntary servant of the State prison system while working in the free community or going to or from such employment." G.S. § 148-33.1(g). The DOC is not authorized to assign a prisoner pursuant to any labor contracts when that prisoner is eligible for work release. Also, a prisoner employed through the work release program is not an agent or employee of the State prison system. This, along with the stipulations and Pre-Trial Agreement, is sufficient to show that plaintiff was not "being worked by the State."

The General Assembly has specifically excluded the provisions of the Workers' Compensation Act from certain prison laborers. Counties may work prisoners confined in local confinement facilities. G.S. § 162-58. The General Statutes provide for the liability of counties that work prisoners. G.S. § 162-61. Counties are liable for emergency medical services for prisoners while they are working and for injuries to third parties incurred through the negligence of working prisoners. *Id.* However, this provision states that the "[Employment Security and Workers' Compensation Act] of the General Statutes shall have no application to prisoners" worked by counties. *Id.* However, there is no similar exclusion in the statutes authorizing work release. Prisoners employed in the work release program are only specifically excluded from "any benefits under Chapter 96 of the General Statutes entitled 'Employment Security' during the term of the sentence" but there is no specific exclusion for Chapter 97, the Workers' Compensation Act. G.S. § 148-33.1(h). In the statute authorizing work release, the General Assembly made no specific exclu-

**HARRIS v. THOMPSON CONTR'RS, INC.**

[148 N.C. App. 472 (2002)]

sion for the Workers' Compensation Act as it did in the statutes authorizing the working of county prisoners.

*Parker* is distinguishable from the instant case. In *Parker*, the claimant was injured on the job before his incarceration and was already receiving benefits. *Parker* at 86, 422 S.E.2d at 585. Here, plaintiff was already incarcerated at the time of his injury and was involved in the work release program when his work related injury occurred.

Moreover, in *Parker's* holding, this Court in dicta stated "we note that the legislature may want to examine the possibility of continuing payment of benefits during a period of incarceration directly to a prisoner's dependents, who may have been relying on the disability payments as a major, or sole, source of income." *Id.* at 88, 422 S.E.2d at 587.

Here, the Full Commission entered the following award:

1. Defendants shall pay the Department of Correction temporary total disability compensation at the rate of $204.99 per week for the period of 17 September 1997 through the present and continuing, with said payments to be managed and appropriately distributed by the Department of Correction under its work release program. This compensation is subject to the attorney's fee approved herein.

2. Defendants shall pay for all medical expenses incurred or to be incurred, subject to the provisions of G.S. § 97-25.1. Defendants shall reimburse the Department of Correction for any payments it has made on behalf of plaintiff relating to his medical care resulting from this injury by accident.

Plaintiff's benefits will be paid to DOC and distributed according to the usual regulations applicable to inmates' work release income. According to G.S. § 148-33.1(f)(2), plaintiff is allowed a reasonable allowance for his incidental personal expenses. Amounts are deducted from plaintiff's earnings for other costs, including plaintiff's keep, judgments and court orders. G.S. § 148-33.1(f). The remaining balance is kept and accumulated to be disbursed to plaintiff when he is discharged or paroled. *Id.*

On these facts we hold that the Full Commission properly concluded that this plaintiff was not barred from the recovery of work-

**HARRIS v. THOMPSON CONTR'RS, INC.**

[148 N.C. App. 472 (2002)]

ers' compensation benefits by his status as a prisoner. This holding does not affect the ability of the Department of Correction to recover money it has spent on behalf of plaintiff for his medical care.

**[2]** Defendants contend that the Full Commission erred in failing to find that plaintiff's claim is barred by his willful intention to injure or kill himself. We do not agree.

Here, the Full Commission found that "[d]efendants have failed to produce any credible evidence that plaintiff's actions on 17 September 1997 which resulted in his injuries were taken with the specific intention of injuring himself or others." The Full Commission concluded that "[t]he evidence fails to establish that plaintiff's injuries were the result of a willful intention to injure himself or others, or the result of a willful breach of a safety rule or procedure adopted by defendant-employer."

Defendants argue that G.S. § 97-12(3) should bar plaintiff's claim. G.S. § 97-12(3) states that "[n]o compensation shall be payable if the injury or death to the employee was proximately caused by: . . . (3) His willful intention to injure or kill himself or another." Defendants argue that plaintiff intentionally attempted to "walk" the crane with the boom and drop ball raised. Since plaintiff was aware that this was dangerous, defendants assert that plaintiff's action shows his intention to injure himself. In the alternative, defendants argue that G.S. § 97-12 should reduce plaintiff's award by ten percent. It states "[w]hen the injury or death is caused . . . by the willful breach of any rule or regulation adopted by the employer and approved by the Commission and brought to the knowledge of the employee prior to the injury compensation shall be reduced ten percent (10%)." G.S. § 97-12. We are not persuaded.

In order for G.S. § 97-12(3) to bar compensation, "there must have been a willful intention to injure." *Rorie v. Holly Farms*, 306 N.C. 706, 710, 295 S.E.2d 458, 461 (1982). "Intent is usually proved by circumstantial evidence and is therefore reserved for the trier of fact." *Id.*

Defendant's superintendent of the work site testified that he had reprimanded plaintiff twice for walking the crane with the drop ball raised. The last reprimand was one hour before the accident. The superintendent stated that plaintiff was "making a mistake" by operating the crane that way. The superintendent testified that he did not

remove plaintiff from the crane because he "had never seen him take it way up to the top. I mean, I had never seen that happen."

"The negligence of the employee, however, does not debar him from compensation for an injury by accident arising out of and in the course of his employment." *Archie v. Lumber Co.*, 222 N.C. 477, 480, 23 S.E.2d 834, 836 (1943). In addition, "not even gross negligence is a defense to a compensation claim." *Hartley v. Prison Department*, 258 N.C. 287, 289, 128 S.E.2d 598, 600 (1962). There was no evidence that would show plaintiff willfully intended to injure himself or someone else.

Defendants' alternative argument is also without merit. G.S. § 97-12 states that in order for the award to be reduced, the regulation must be approved by the Industrial Commission. Here, there is no evidence that Thompson's "rule" regarding the movement of the crane with the drop ball raised off the ground was ever reduced to writing. The superintendent was asked whether Thompson's safety policy covered when, how and under what circumstances a crane should be moved. The superintendent testified that it was "[n]ot in the company policy, I don't think it does." The evidence supports the Full Commission's finding which in turn justifies its conclusion that "[t]he evidence fails to establish that plaintiff's injuries were the result of a willful intention to injure himself or others, or the result of a willful breach of a safety rule or procedure adopted by defendant-employer." This assignment of error is overruled.

[3] Defendants next contend that the Full Commission erred in its application of *Hoyle v. Isenhour Brick and Tile Co.*, 306 N.C. 248, 293 S.E.2d 196. We do not agree.

The Full Commission found that "[a]lthough plaintiff had previously been warned about moving the crane with the drop ball raised, he was not disobeying a direct or specific order from a then present supervisor when this incident occurred on 17 September 1997." The Full Commission concluded that "[p]laintiff was not disobeying a direct or specific order from a then present supervisor when this incident occurred on 17 September 1997 and, therefore, he may recover compensation for his claim."

Defendants argue that the absence of a supervisor should not determine the matter. They argue that plaintiff's actions were not in furtherance of Thompson's business so plaintiff's disobedient act should operate to bar recovery.

*Hoyle* stated that:

[W]e find that thrill seeking which bears no conceivable relation to accomplishing the job for which the employee was hired moves the employee from the scope of his employment. Likewise, disobedience of a direct and specific order by a then present superior breaks the causal relation between the employment and the resulting injury.

*Hoyle*, 306 N.C. at 259, 293 S.E.2d at 202 (citations omitted). *Hoyle* also stated "[w]e are therefore of the opinion that employee's election to disobey a prior given order did not break the causal connection between his employment and his fatal injury if the disobedient act was reasonably related to the accomplishment of the task for which he was hired." *Id.* at 259, 293 S.E.2d at 203.

The superintendent testified that at the time of the accident there was not anyone "standing beside [plaintiff]" or anyone "standing there watching him the entire time." Plaintiff was hired to work as a drop ball operator. Plaintiff testified that just before the accident, he was "walking" the crane. Plaintiff was operating the crane which is a duty he was hired to perform. This is competent evidence to support the finding that plaintiff "was not disobeying a direct or specific order from a then present supervisor" at the time of the accident. This finding justifies the conclusion that "[p]laintiff was not disobeying a direct or specific order from a then present supervisor . . . therefore, he may recover compensation for his claim." This assignment of error is overruled.

Accordingly, the Opinion and Award for the Full Commission is affirmed.

Affirmed.

Judges MARTIN and BIGGS concur.