***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which the parties entered into as:
 STIPULATIONS
All parties are properly before the North Carolina Industrial Commission and that the Industrial Commission has jurisdiction of the parties and of the subject matter. *Page 2 
1. All parties have been correctly designated and that there is no question as to the misjoinder or nonjoinder of parties.
2. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
3. At all times relevant hereto, the employment relationship existed between the employee and employer.
4. Fairfield Insurance Company/The First Comp Program is the proper insurance carrier for this claim.
 ***********
Based upon the competent evidence of record the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was 58 years old at the time of the hearing before the Deputy Commissioner. He is a high school graduate and attended one year of technical college for electrical insulation and maintenance. He took early retirement from Philip Morris, Inc. in April of 2002 after working there for 18 years as a production technician.
2. Plaintiff began working for defendant-employer part-time as a delivery driver on or about July 16, 2002. In this position, plaintiff delivered auto parts to customers. Plaintiff remained in this position, performing these job duties, through his last day of work with defendant-employer on August 25, 2003.
3. With defendant-employer, plaintiff routinely worked a five-day workweek, Monday through Friday, working about five hours per day. Beginning in the spring of 2003, plaintiff also worked at Ben Mynatt Pontiac on a part-time basis delivering cars. *Page 3 
4. On August 11, 2003, plaintiff was performing a "switch out" delivery for a customer, in which plaintiff delivered a new vehicle battery to replace an old one and took the old battery back to the store for disposal. Plaintiff was alone. The batteries were for a power truck and weighed over 100 pounds each. While lifting one of the batteries, plaintiff felt a pain in his back that went down his left leg. He had never experienced back and leg pain like this before.
5. Plaintiff returned to defendant-employer's store and reported his back injury to his supervisor, Ron Robertson. About three days later, Mr. Robertson told Wade Rouzer, the part-owner and general manager of defendant-employer, about plaintiff's back injury.
6. Mr. Rouzer testified that, before plaintiff left the store with the truck battery, he instructed plaintiff to get some help lifting the batteries when he was at the customer's place of business. Plaintiff testified that he did not ask for any help lifting the batteries and that no one with defendant-employer had instructed him to do so.
7. After the August 11, 2003 incident, plaintiff continued working for defendant-employer for two more weeks, through August 25, 2003. During this time, plaintiff continued his normal duties, although he suffered from back and left leg pain the entire time.
8. On August 25, 2003, plaintiff went to his family doctor, Dr. Cecil Farrington, to consult with him about his low back and left leg pain. Plaintiff told Dr. Farrington that, about ten days prior, he had picked up a large battery at work and felt something pull in his back and that, since then, he had been unable to maneuver without severe pain. Dr. Farrington took plaintiff out of work for two weeks, prescribed a Sterapred Double Dosepack and ordered a lumbar MRI. *Page 4 
9. On September 10, 2003, plaintiff underwent a lumbar MRI, which showed disc bulges and other problems at several levels.
10. Dr. Farrington referred plaintiff to Dr. Nick Grivas, a neurosurgeon.
11. Dr. Grivas performed a microdiskectomy at L4-5 on plaintiff on September 30, 2003. Dr. Grivas considered plaintiff to have been totally disabled from any work at the time of Dr. Farrington's referral.
12. Plaintiff continued to have left leg pain following the surgery and Dr. Grivas referred him to Dr. Mark Romanoff for pain management.
13. Plaintiff presented to Dr. Romanoff on November 19, 2003, and Dr. Romanoff's impression was that plaintiff was suffering from post-laminectomy syndrome and lumbar radiculopathy. He prescribed Zonegran and physical therapy, and he suggested that a nerve root block might be appropriate.
14. Dr. Romanoff took plaintiff out of work through February 19, 2004. In his February 19, 2004 office note, Dr. Romanoff wrote that plaintiff's pain was much improved but that, because "lifting at work worsens his pain," he would keep plaintiff out of work until his next visit.
15. Plaintiff returned to Dr. Romanoff on April 20, 2004, whereupon Dr. Romanoff noted that, although plaintiff continued to have some back and left leg pain, his pain was about 80 percent improved.
16. Dr. Romanoff's April 20, 2004 office note suggests that plaintiff had been working steadily since the February 19, 2004 visit. As Dr. Romanoff testified, plaintiff told him on April 20, 2004 that he had been working part-time and had not missed any work since his *Page 5 
February 19, 2004 visit. Plaintiff had resumed his part-time job with Ben Mynatt Pontiac delivering cars two to four days per week.
17. On April 20, 2004, Dr. Romanoff provided a work restriction to plaintiff of no lifting over 25 pounds "for [the] foreseeable future."
18. Dr. Farrington testified that the back and leg symptoms for which he saw plaintiff were consistent with a traumatic incident like lifting a heavy vehicle battery and were "certainly related" temporally to the lifting incident that plaintiff described.
19. Dr. Romanoff testified that his findings were consistent with a lifting injury, and the disk fragment that Dr. Grivas removed in surgery was created by a traumatic event that was "certainly consistent with the lifting incident."
20. Neither Dr. Grivas nor Dr. Romanoff could opine as to whether plaintiff has reached maximum medical improvement, nor could they comment on plaintiff's level, if any, of permanent partial impairment. Dr. Romanoff felt that plaintiff may need to undergo a functional capacity evaluation.
21. All three doctors testified that, in their opinions, plaintiff is not a malingerer. Mr. Rouzer, defendant-employer's part-owner and general manager, testified that plaintiff was his long-time friend and customer, that he was a good employee, and that there was no reason to believe that plaintiff was dishonest.
22. Plaintiff's W-2 detail for 2004 shows that plaintiff earned $5,822.00 working for Ben Mynatt Pontiac in 2004. Plaintiff testified that in 2005 through the date of the hearing before the Deputy Commissioner on October 27, 2005, he had earned about $3,000.00 working for Ben Mynatt Pontiac. *Page 6 
23. Plaintiff has drawn retirement benefits continuously since his retirement from his former Philip Morris job in 2002.
24. Plaintiff remains in everyday pain, and he has trouble with yard work, household chores and making long drives for Ben Mynatt Pontiac.
25. Presently, plaintiff cannot perform his former job with defendant-employer as it involves too much heavy lifting. As Mr. Rouzer testified, unless and until plaintiff gets a medical release to return to full-duty work, it would not be safe for plaintiff to return to work with defendant-employer.
26. Defendants' Form 22 shows that Plaintiff earned $8,184.75 from defendant-employer in the 52 weeks preceding his August 11, 2003 injury. Dividing this total by 52 yields an average weekly wage of $157.40 for plaintiff, which yields a weekly compensation rate of $104.94.
27. Whether or not plaintiff disobeyed a direct order about getting help to lift the battery, no supervisor was present when plaintiff lifted the battery and injured his back on August 11, 2003. Further, lifting the battery was reasonably related to plaintiff's accomplishment of a task for which defendant-employer hired plaintiff, namely the delivery of auto parts to customers.
28. When he lifted the battery on August 11, 2003, plaintiff experienced a specific traumatic incident arising out of and in the course of his employment with defendant-employer, the direct result of which was an injury to plaintiff's lower back. As such, plaintiff sustained a compensable back injury on August 11, 2003. Further, plaintiff's left leg symptoms were directly related to the compensable back injury. *Page 7 
29. From August 25, 2003, when Dr. Farrington wrote him out of work, until plaintiff returned to work with Ben Mynatt on or about February 20, 2004, plaintiff was incapable of work in any employment.
30. From February 20, 2004 through the present, plaintiff has been working with Ben Mynatt Pontiac and is earning less than he earned prior to sustaining his compensable back injury. Given that plaintiff returned to work with Ben Mynatt Pontiac on or about February 20, 2004 and that he earned $5,822.00 from that job in 2004, plaintiff's average weekly wage with Ben Mynatt Pontiac during 2004 was $129.38 ($5,822.00 divided by 45 weeks).
31. The medical treatment that plaintiff has heretofore received related to his compensable back injury from and upon the recommendation of Drs. Farrington, Grivas and Romanoff has been reasonably required to effect a cure, provide relief and/or lessen the period of plaintiff's disability.
32. Further treatment with Drs. Grivas and/or Romanoff is reasonably required to effect a cure and/or provide relief for plaintiff's compensable back injury.
33. Defendants have not defended this claim without reasonable ground.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. When he lifted the battery on August 11, 2003, plaintiff experienced a specific traumatic incident arising out of and in the course of his employment with defendant-employer, the direct result of which was an injury to plaintiff's lower back. As such, plaintiff sustained a *Page 8 
compensable back/left leg injury on August 11, 2003. N.C. Gen. Stat. § 97-2(6); See Hoyle v. Isenhour Brick Tile Co., 306 N.C. 248 (1982).
2. When an employee who holds two separate jobs is injured in one of them, his compensation is based only upon his average weekly wage earned in the employment producing the injury. Therefore, the wages plaintiff earned from his employment with Ben Mynatt Pontiac are not included in the calculation of plaintiff's average weekly wage. See Joyner v. A.J.Carey Oil Co., 266 N.C. 519 (1966).
3. Plaintiff was totally disabled from employment during the period from August 26, 2003 through February 19, 2004 and is entitled to receive temporary total disability compensation for this period at the rate of $104.94 per week. N.C. Gen. Stat. § 97-29.
4. Plaintiff has been partially disabled since February 20, 2004 and is entitled to receive temporary partial disability compensation for this period and ongoing, at varying rates, as set out below, but no greater than 300 weeks from the date of injury as provided by N.C. Gen. Stat. § 97-30. N.C. Gen. Stat. § 97-30.
5. Plaintiff is entitled to have defendants pay for the medical treatment that he has heretofore received from or upon the recommendation of Drs. Farrington, Grivas and Romanoff since August 25, 2003 for his compensable back/left leg injury. Further, if plaintiff or any third-party payor has paid for any such treatment, including but not limited to plaintiff's September 30, 2003 surgery, then defendants must reimburse such payor in full. N.C. Gen. Stat. § 97-25.
6. As defendants have not defended this claim without reasonable grounds, plaintiff is not entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1.
 *********** *Page 9 
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to the attorney's fee provision below, defendants shall pay to plaintiff, in a lump sum: (1) temporary total disability compensation in the amount of $104.94 per week for the period from August 26, 2003 through February 19, 2004; and (2) temporary partial disability compensation in the amount of $18.68 per week (which is two-thirds of the difference between $157.40 and $129.38) for the period from February 20, 2004 through December 31, 2004.
2. Further, defendants shall pay to plaintiff, in a lump sum, temporary partial disability compensation for all of 2005 and for 2006 through the present, to be figured based upon a pre-injury average weekly wage of $157.40, upon plaintiff's verified production of earnings documentation for 2005 and 2006 from his Ben Mynatt Pontiac job and any other source(s) of earnings. Said compensation is subject to the limitations set forth in N.C. Gen. Stat. § 97-30 providing that in no case shall the period covered by such compensation be greater than 300 weeks from the date of injury.
3. Further, defendants shall pay ongoing temporary partial disability compensation to plaintiff on a quarterly basis based upon plaintiff's verified production of earnings documentation and subject to the limitations set forth in N.C. Gen. Stat. § 97-30 providing that in no case shall the period covered by such compensation be greater than 300 weeks from the date of injury.
4. As plaintiff's attorney's fee, defendants shall pay separately to plaintiff's counsel, out of the amounts payable pursuant to Paragraphs 1-3 above, one-fourth of each amount. *Page 10 
5. Defendants shall pay all outstanding bills related to treatment that plaintiff has heretofore received for his compensable back/leg injury from or upon the recommendation of Drs. Farrington, Grivas and Romanoff. If plaintiff, the North Carolina Division of Vocational Rehabilitation Services or any other third-party payor has paid for any such treatment, then defendants shall reimburse such payor in full.
6. Drs. Grivas and Romanoff are hereby designated as plaintiff's treating physicians, and defendants shall authorize and pay for any treatment, including but not limited to diagnostic testing, that Drs. Grivas and Romanoff recommend for plaintiff's compensable back/left leg condition.
7. Defendants shall pay the costs. As part of the costs, defendants shall pay the following expert witness fees: $500.00, or the amount actually billed, whichever is less, to Dr. Grivas; $420.00, or the amount actually billed, whichever is less, to Dr. Romanoff; and, $330.00, or the amount actually billed, whichever is less, to Dr. Farrington.
This the 21st of December, 2006.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 11 
 S/_____________ PAMELA T. YOUNG COMMISSIONER *Page 1