MRS. ANNIE LAURA CLARK, ADMINISTRATRIX OF THE ESTATE OF H. P. CLARK, AND NEXT FRIEND OF HAROLD WAYNE CLARK, MINOR SON, AND WILLIAM BLANCHARD CLARK, MINOR SON; H. P. CLARK, DECEASED, v. BURTON LINES, INC., EMPLOYER AND SECURITY INSURANCE COMPANY, CARRIER.

(Filed 12 January, 1968.)

**1. Master and Servant § 93—**

The findings of fact of the Industrial Commission are conclusive on appeal when supported by competent evidence.

**2. Master and Servant § 53—**

The death of an employee is compensable under the Workmen's Compensation Act only if it results from an injury by accident arising out of and in the course of his employment.

**3. Master and Servant § 54—**

The words "out of" refer to the origin or cause of the accident, and the words "in the course of" to the time, place and circumstance under which the accident occurred.

**4. Same—**

Findings that the deceased, an employee of a trucking line, was instructed by the company dispatcher to drive to a truck terminal and await the arrival of another employee in order that they might together return a trailer to the home office, that the deceased arrived at the terminal, had dinner, went to a movie and returned to the trailer for the night, and that the other employee found the deceased the next morning in the trailer dead of suffocation from a smoldering fire, *held* sufficient to show a causal relation between the employment and the death.

**5. Master and Servant § 69—**

Where the method of computing the average weekly wage set out in the first section of G.S. 97-2(5) would be unfair because of exceptional circumstances, the Industrial Commission is authorized to use such other method of computation as would most nearly approximate the amount the injured employee would be earning if he were living.

**6. Same—**

Evidence that the deceased leased four tractor-trailers to a trucking firm under an arrangement whereby the firm was to receive twenty-five per cent of the gross income earned by the trucks, and that all expenses incurred by the firm in the operation and maintenance of the trucks were to be deducted from the net income and the balance then paid over to the deceased, who was also employed by the firm to drive the trucks, *is held* sufficient to constitute an exceptional reason to employ the method of computation used by the commission in this case.

APPEAL by plaintiff from *McKinnon, J.,* May 1967 Regular Civil Session, ALAMANCE County Superior Court.

H. P. Clark owned four tractor trailers which he leased to Burton Lines, Inc. (Burton). It was a common carrier operating from Reidsville and owned some twenty-five other tractor trailers. Under the lease, Burton was to receive twenty-five per cent of the gross earnings of Clark's equipment. The remainder was paid to him, and from it he paid the expenses of their operation. Burton had control of the tractors and trailers and paid workmen's compensation premiums on Clark. He did not have an I.C.C. franchise to operate his trucks but did so under Burton's franchise. In the year 1963, Clark's equipment earned a gross of $22,984.34. From this amount the expenses advanced by Burton for the operation and repair to

trucks were deducted, and the balance of $14,260.79 was paid direct to Clark. This constituted an overpayment of approximately $1,500.00.

On 18 November 1963 Burton's dispatcher, Thomas J. Price, instructed Clark to take a truckload of tobacco to Lumberton, N. C. and then go to Darlington, S. C. where he was to await the arrival of Troy Goss. Goss was the driver of one of the four tractor trailers owned by Clark which was leased to Burton. Upon Goss's arrival at Darlington, Clark was to load a trailer owned by Burton, which was used in Darlington as an office and sleeping quarters for its employees. The trailer was to be hooked up to Clark's tractor and hauled back to Reidsville. Goss was to load Clark's trailer onto his own and return to Reidsville also.

Clark followed his instructions: he delivered the tobacco to Lumberton and then went to Darlington, arriving there about 3:00 p.m., 19 November 1963. He called a friend, had dinner, went to a movie and then about 11:00 p.m. went to the trailer which he was to haul to Reidsville the next day. The next morning Clark was found dead in the trailer "due to accidental suffocation."

Goss arrived at the Burton terminal on the morning of November 20. Clark's truck was sitting in the yard. Goss knocked on the door of the trailer, got no answer, saw the results of smoke and entered. He found Clark sitting in a chair and thought he was dead. He called the local police officers, and Burton, to give them this information.

Upon supporting evidence, the Hearing Commissioner found the facts summarized above, that the deceased was an employee of Burton and that he "sustained an injury by accident arising out of and in the course of his employment with defendant employer, which resulted in his death by accidental suffocation," and made the maximum award of $12,000. Upon appeal to the Full Commission, the above findings, conclusions and award were eventually affirmed. The defendant appealed to the Superior Court of Alamance County which vacated and set aside the Commission's orders, holding that there was no competent evidence to support the Commission's finding that the average weekly wage of the deceased was more than $62.50 or that Clark's death arose out of and in the course of his employment.

The plaintiff appealed.

*John D. Xanthos, attorney for plaintiff appellant.*
*Sanders & Holt by Emerson T. Sanders, attorneys for defendant appellees.*

PLESS, J. The Workmen's Compensation Act and dozens of decisions of this Court are emphatic in holding that if there is any

competent evidence to support a finding made by the Commission the court is bound by it. *Latham v. Grocery Co.*, 208 N.C. 505, 181 S.E. 640. The lower court set aside the award upon the two grounds set forth in the statement of facts which will be here examined separately.

The first of these is that there was no competent evidence to support the finding that Clark's death arose out of and in the course of his employment. We cannot agree. The dispatcher for Burton testified that he gave Clark instructions to deliver a load of tobacco to Lumberton and "that when he delivered his hogsheads of tobacco in Lumberton to go from there to our terminal in Darlington, South Carolina, and wait; that he was to wait there for one of his drivers, Troy Goss. That upon Troy's arrival he was to take the cinder blocks from underneath the house trailer, load his trailer up on Troy's flat trailer, and for him to pull the house trailer to Reidsville." The witness also testified that he was sure that Clark obeyed his order.

Goss testified that upon his arrival in Darlington that morning "Mr. Clark's truck was sitting in the yard and everything was quiet. I got out of my truck and checked my watch for logging purposes, and I went up to the door and I knocked on the door and no one opened the door and no one answered, and so I looked around the door and saw the results of smoke, so I opened the door, and that is when I seen Mr. Clark . . . sitting in the kitchen area in the chair. . . . I called his name, but there was no answer. . . . I thought he was dead. . . . I . . . made the call to the law [and] also telephoned Burton Motor Lines after we found that Mr. Clark had passed away."

The area where the deceased was sitting was charred and smoked, as were the living room and bedroom, and the mattress on the bed was in a state of disintegration, smoldering fire.

The deceased was instructed to go to Darlington and *wait,* and his dispatcher was *sure* he followed his instructions. From the evidence it cannot be disputed that the deceased was where he was instructed to be and doing what he was instructed to do at the time he suffered death by suffocation. It follows that his death would not have occurred had he not been at the place his employer ordered and at the time he was supposed to be there. Even had there been any deviation from the employer's business on the previous evening — which is not to be assumed inasmuch as he did not expect to meet Goss until the following morning — he had returned to the place of his employment and to the duties connected with it at the time of his death.

In *Jackson v. Creamery,* 202 N.C. 196, 162 S.E. 359, the employee, having worked for fifteen hours, stopped and parked his employer's

truck in front of a cafe and had supper, got a shave and haircut, and also shot a game or two of pool. Thereafter, while returning the truck to the Creamery he had an accident and was injured. The Industrial Commission concluded that even if the claimant temporarily abandoned his master's business when visiting the barber shop and poolroom and other places for his personal business and for his personal amusement, he resumed it on starting to return the truck of the master to its proper place, and awarded compensation.

To be compensable under the Workmen's Compensation Act, an employee must be injured by accident arising out of and in the course of his employment. "The words 'out of,' refer to the origin or cause of the accident and the words 'in the course of,' to the time, place and circumstances under which it occurred." *Cole v. Guilford County*, 259 N.C. 724, 131 S.E. 2d 308.

> "An accident arising 'in the course of' the employment is one which occurs while 'the employee is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time to do that thing'; or one which 'occurs in the course of the employment and as the result of a risk involved in the employment, or incident to it, or to conditions under which it is required to be performed.' " *Conrad v. Foundry Company*, 198 N.C. 723, 153 S.E. 266.

In *Perry v. Bakeries Co.*, 262 N.C. 272, 136 S.E. 2d 643, Moore, J., speaking for the Court, said:

> " 'The term "arising out of employment," it has been said, is broad and comprehensive and perhaps not capable of precise definition. It must be interpreted in the light of the facts and circumstances of each case, and there must be some causal connection between the injury and the employment.' To be compensable an injury must spring from the employment or have its origin therein. An injury arises out of the employment when it is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so that there is some causal relation between the injury and the performance of some service of the employment. An accident arises out of and in the course of the employment when it occurs while the employee is engaged in some activity or duty which he is authorized to undertake and which is calculated to further, directly or indirectly, the employer's business." (Citations omitted.)

" 'Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown.' " *Kiger v. Service Co.*, 260 N.C. 760, 133 S.E. 2d 702.

All of the cases quoted are fully supported by many previous decisions or have been frequently followed in later cases.

The other ground upon which the court set aside the award was that there was no competent evidence to support the finding that the average weekly wage of the deceased was more than $62.50. While the Commission did not state the method used in computing the average weekly wage, it is apparent, and is assumed by the appellant in his brief, that the authority of paragraph 2 of subsection 5 of section 2 of the Workmen's Compensation Act was utilized:

"But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury."

In commenting upon this paragraph, Justice Winborne (later C.J.) stated in *Early v. Basnight & Co.*, 214 N.C. 103, 198 S.E. 577:

"The words 'the foregoing' clearly refer to the preceding paragraph, which includes the three methods of computation above described. Hence, it is manifest that where exceptional reasons are found which make the computation on the basis of either of 'the foregoing' methods unfair to the employee, the Legislature intended that the Industrial Commission might resort to such other method of computing the average weekly wages as would most nearly approximate the amount the injured employee would be earning if he were living."

Here, the evidence showed that Burton was to receive twenty-five per cent of the income earned by Clark's trucks. In the forty-six weeks of 1963 which preceded his death, Clark was entitled to $22,984.34 after the payment of the commission to Burton. From this was deducted charges made to Burton for gas, oil, parts and repairs, leaving a balance due Clark of approximately $13,000.00. It is only logical to assume that the owner of four trucks would get no less than one fourth of the amount paid, or approximately $3,200.00; and the Commission would be justified in making such an assumption. These computations mathematically sustain a finding that the average weekly wage of the deceased was more than $62.50 and that the

injured employee would be earning in excess of this amount if he were living. This finding of an average weekly wage in excess of $62.50, in turn, supports the maximum award made by the Commission.

The cause is remanded to the Superior Court of Alamance County with the direction that judgment be entered in accordance with this opinion.

Reversed and remanded.