***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with some minor modifications.
 ***********
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pre-trial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On the date of the injury giving rise to this claim, an employment relationship existed between plaintiff and defendant-employer.
3. Plaintiff's average weekly wage, as determined by the Form 22 wage chart, was $784.35, which yields a compensation rate of $522.93.
4. Plaintiff sustained injuries as a result of a motor vehicle accident on 6 January 2000.
5. In addition to the deposition transcript, the parties stipulated into evidence the following exhibits: (1) Industrial Commission Forms 18, 22, 33 and 33R; (2) employment records; (3) discovery relating to this case; (4) medical records; and (5) telephone records. Subsequent to the hearing, plaintiff submitted a copy of the accident report to which the parties stipulated.
6. The issues to be determined by the Commission are whether plaintiff's injury by accident on 6 January 2000 arose out of and in the course of his employment with defendant-employer, and, if so, to what medical and indemnity compensation is he entitled.
 ***********
The Full Commission adopts with some modifications the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff was hired in April 1999 by defendant-employer as a truck driver transporting poultry to defendant-employer's plants. However, plaintiff, who was a good and valuable employee, later began driving a forklift. As a forklift operator, plaintiff's job was to load trucks with cages filled with the poultry. Plaintiff generally reported to work at 5:00 a.m. each morning.
2. Plaintiff's personal vehicle was stolen in early January 2000. As a courtesy to plaintiff, and so he would have transportation to and from work, defendant-employer temporarily allowed plaintiff to use the company van. Defendant-employer did not have a contractual obligation to provide plaintiff with transportation.
3. As part of defendant-employer's business, contract employees were used as chicken catchers. These chicken catchers were hired by a crew leader, also a contract employee, whose responsibility it was to ensure that enough chicken catchers were on the job as needed. Generally there were about nine chicken catchers per crew. However, in early January 2000, one of the crews was extremely short-handed, to the extent that men who ordinarily worked in the plant were pulled on a temporary basis to work on the farms as chicken catchers. Due to the shortage of catchers, on 5 January 2000 plaintiff brought his brother-in-law, Felipe Ramirez, to work as a chicken catcher. Prior to 5 January 2000, Mr. Ramirez had not worked as a contract chicken catcher for defendants.
4. After the shift was completed on 5 January 2000, Richard Williams, one of the chicken catcher crew leaders, talked to plaintiff and Mr. Ramirez and asked that Mr. Ramirez return the following day to continue assisting the crew in catching chickens. Mr. Ramirez agreed to return, and Mr. Williams told plaintiff to make sure that Richard Evans, defendant-employer's live haul manager, approved Mr. Ramirez's return to work the next day. Plaintiff talked to Mr. Evans, who indicated that it was fine for Mr. Ramirez to return the next day as a chicken catcher.
5. There is some dispute in the evidence regarding what plaintiff was told about Mr. Ramirez's return the following day. Plaintiff testified, and Mr. Ramirez corroborated, that Mr. Evans specifically asked plaintiff to transport Mr. Ramirez to the plant the following morning at 2:00 a.m. Mr. Evans denies that he told plaintiff to drive Mr. Ramirez to the plant the next day.
6. Plaintiff was instructed by Aaron Maness, another live haul manager for defendants, to bring the company van to the plant by 2:00 a.m. on 6 January 2000. Defendants needed the van to transport the crew of chicken catchers to the farm that morning. Plaintiff's normal working day began at 5:00 a.m., not 2:00 a.m.
7. According to telephone records admitted into evidence, on the evening of 5 January 2000 a telephone call from the premises of defendant-employer was placed to plaintiff's mother's house, where plaintiff was staying. Plaintiff testified that this telephone call was made to remind plaintiff to transport Mr. Ramirez to the plant the following day at 2:00 a.m. Whether plaintiff was told in the course of this telephone call to bring Mr. Ramirez to work the next day at 2:00 a.m. or whether the purpose of this call was to remind plaintiff that he must bring the company van to the plant the next day at 2:00 a.m. is irrelevant; it is clear from the competent, credible evidence of record that plaintiff was instructed by defendants to report to the plant at 2:00 a.m. on 6 January 2000, when he normally did not report to work until 5:00 a.m. Plaintiff's drive to work on the morning of 6 January 2000, therefore, in which he both had to return the company van and transport an employee, constituted a special errand assigned by defendants.
8. In the very early morning hours of 6 January 2000, plaintiff left his mother's house and traveled to the home of Mr. Ramirez to transport Mr. Ramirez to the plant. During the drive to the plant with Mr. Ramirez, plaintiff was involved in a motor vehicle accident.
9. After the motor vehicle accident, plaintiff was taken to the emergency department at Cape Fear Valley Medical Center where he had numerous injuries, including open wounds of the leg, a concussion, and a principal diagnosis of a severe burst fracture at L1. Plaintiff came under the care of Dr. Jaufmann, a neurosurgeon, who ultimately performed, with two other surgeons, a fusion and decompression on the affected vertebra. Plaintiff was discharged from the hospital on 16 January 2000.
10. Plaintiff continued to treat with Dr. Jaufmann after his discharge from the hospital at least through October 2000. As of 26 October 2000, the date of Dr. Jaufmann's deposition, Dr. Jaufmann had not released plaintiff to return to work in his former employment as a truck driver and forklift operator. In his deposition Dr. Jaufmann indicated that plaintiff probably needed therapy or work-hardening in an effort to assist plaintiff in being functionally able to return to work in some capacity. Plaintiff was not yet at maximum medical improvement.
11. Plaintiff had not worked in any capacity as of 26 October 2000. At least as of that date, plaintiff was not capable of returning to work in any capacity until he underwent additional medical and/or rehabilitative treatment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. In order for an injury occurring while an employee is traveling to or from work to be compensable, an exception to the coming and going rule must apply. One such exception involves the situation in which an employee is injured while on a "special errand" or while performing a duty or mission assigned by the employer. Powers v. Lady's FuneralHome, 306 N.C. 728, 295 S.E.2d 473 (1982). Plaintiff herein suffered an injury by accident as defined in the Act. N.C. Gen. Stat. § 97-2(6). Because plaintiff was on a special errand of his employer in that he had to bring the company van back to the employer at a particular time that was not his normal work time and to transport a necessary worker, the injury by accident arose out of his employment. Powers, supra. Additionally, plaintiff's injury by accident occurred in the course of his employment because it occurred under circumstances in which plaintiff was engaged in an activity that he was authorized to take and that was calculated, even if indirectly, to further the employer's business.Powers, supra; see also Clark v. Burton Lines, 272 N.C. 433, 158 S.E.2d 569
(1972). Accordingly, on 6 January 2000 plaintiff sustained a compensable injury by accident arising out of and in the course of his employment. N.C. Gen. Stat. § 97-2(6).
2. As a result of his compensable injury by accident, plaintiff was temporarily totally disabled and is entitled to compensation at the rate of $522.93 per week from 6 January 2000 and continuing. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendants provide all reasonably necessary medical treatment arising from plaintiff's compensable injury to the extent it tends to effect a cure, give relief or lessen the period of plaintiff's disability. N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay plaintiff temporary total disability compensation in the weekly amount of $522.93, beginning 6 January 2000 and continuing until such time as plaintiff returns to work or until further order of the Commission. Said benefits that have accrued shall be paid in a lump sum.
2. Defendants shall pay medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or lessen plaintiff's disability.
3. Plaintiff's counsel is entitled to a reasonable attorney's fee of 25% of the compensation awarded herein to plaintiff. Accordingly, of the lump sum amount awarded to plaintiff, defendants shall deduct one-fourth of the lump sum and forward this amount directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be forwarded directly to plaintiff's counsel.
4. Defendants shall bear the costs of this proceeding.
This the ___ day of December 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/________________ BERNADINE BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mhb