***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; or rehear the parties or their representatives; or amend the Opinion and Award. The Full Commission hereby affirms the Opinion and Award of Deputy Commissioner Donovan with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On September 13, 2006, the date of the alleged injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. On the date of the alleged injury, an employment relationship existed between plaintiff and employer-defendant.
3. At all times relevant to plaintiff's alleged injury on September 13, 2006, employer-defendant Tyco Electronics was self-insured and Sedgewick CMS was its Servicing Agent.
4. The plaintiff's average weekly wage is $846.17, which yields a compensation rate of $564.14, as reflected in payroll documentation produced by defendants.
5. The issues for determination are:
 a. Whether plaintiff sustained a compensable injury by accident to the right knee and/or right shoulder on or about September 13, 2006, arising out of his employment with employer-defendant?
 b. Whether plaintiff's current medical condition is causally related to the alleged accident of September 13, 2006?
 c. If plaintiff's injury and/or current medical condition are compensable, to what compensation and medical benefits, if any, is plaintiff entitled?
6. The parties stipulated to the following documentary evidence:
 • Stipulated Exhibit 1 — Industrial Commission Forms, plaintiff's medical records by provider, plaintiff's Social Security Disability file, defendants' discovery responses and plaintiff's discovery responses.
 • Stipulated Exhibit 2 — Plaintiff's complete personnel file
 • Stipulated Exhibit 3 — Additional medical records
 *********** *Page 3 
Based upon all of the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff had been employed at employer from March 1995 until October 30, 2006. Plaintiff was employed as a stamping associate and his job duties included operating a stamping press.
2. On September 12, 2006, the day before plaintiff's alleged injury at work, plaintiff was unloading a heavy fence from the back of a pickup truck at his home. Plaintiff slipped and fell off the side of his truck. As a result of his fall, plaintiff went to the Emergency Room.
3. While at the Emergency Room, plaintiff's right side was x-rayed and he was given pain medication and an injection. In addition, plaintiff was provided with an out of work note that took him out of work for three days.
4. The next morning before work, plaintiff called his supervisor, Jackie Weatherman, and told him that he had sustained an accident the night before when he fell off his truck while trying to unload a fence and he had been in the hospital emergency room most of the night. Plaintiff told Mr. Weatherman that he badly bruised his hip and buttocks area and wanted to know what his options were with respect to missing work. Mr. Weatherman explained to him that if he had a doctor's note, then employer would not allow him to return to work until the doctor released him. Plaintiff did not tell Mr. Weatherman at that time that he had a doctor's note taking him out of work for three days. Mr. Weatherman also explained to plaintiff that his absence would be excused with no pay unless it went over seven full days, and on the eighth day, it would go into short term disability. Mr. Weatherman told plaintiff in essence that if you do not have a doctor's excuse, then it goes in as unexcused time. *Page 4 
5. Plaintiff reported to work on September 13, 2006, and received his assignment from his group leader, Rick Wilson. Plaintiff testified that while working at the stamping press, he fell two times, and almost fell a third time, injuring his right knee and right shoulder in the falls.
6. Plaintiff admitted at hearing that his right shoulder had a small tear for "quite a while before" his alleged falls at work. Plaintiff also admitted to previously injuring his right shoulder weight lifting. Plaintiff testified that he was receiving ongoing medical treatment for his right shoulder and back prior to his alleged falls.
7. Plaintiff testified that when he returned to work the day after his fall from the pickup truck, his leg gave out and caused him to fall at work. Plaintiff further testified that the only thing he could think of that would cause his at-work fall was (1) that his knee was not able to carry the load of an injured thigh during the day, (2) that weakness in his leg from his thigh injury caused him to fall, and (3) that the medication he was on caused him to fall.
8. Lorne Green testified that he witnessed plaintiff fall against a tool box at work on September 13, 2006. Plaintiff told Mr. Green that he fell because his knee gave way. Contrary to plaintiff's discovery responses, Mr. Green did not catch plaintiff when he fell.
9. Plaintiff did not give his doctor's excuse to his supervisor, Mr. Weatherman, until the end of the day on September 13, 2006. When plaintiff turned in his doctor's excuse, he did not tell Mr. Weatherman about his alleged falls at work during the day. Plaintiff's doctor's excuse was turned over to the plant nurse, Robin Sharpe.
10. Mr. Weatherman testified that the week before plaintiff's fall at home from the truck, plaintiff had inquired of Mr. Weatherman as to the amount of personal time plaintiff had available. Plaintiff told Mr. Weatherman he needed to know if the amount of the personal time *Page 5 
he had remaining because he was having back problems and might need to take some time off from work.
11. Plaintiff did not report to work on September 14, 2006, the day following the alleged falls at work, but rather sought medical treatment from his family doctor. Contrary to plaintiff's testimony that he only injured his right thigh when he fell off the pickup truck, the medical history from plaintiff's visit to his family doctor indicates that plaintiff hit his right leg, right shoulder and right knee when he fell off the top of the truck bed. That note also indicates that while plaintiff was at work the day following the fall out of the truck, he had pain and swelling in his knee that increased as the day progressed.
12. Plaintiff did not apply at employer for FMLA under the Family Medical Leave Act. Plaintiff did not apply at employer for short-term disability until October 2006.
13. Jimmy Harris was employed at employer as a production manager for all of stamping and assembly. Mr. Harris testified that plaintiff eventually returned to work with restrictions which were accommodated by employer. Mr. Harris testified that plaintiff never told him that he fell at work.
14. Robin Sharpe, the plant nurse, testified that she spoke with plaintiff on September 15, 2006, when plaintiff called her to let her know that his doctor had written him out of work. Plaintiff told Ms. Sharpe that he had been injured at home when he had fallen off his truck. Ms. Sharpe testified when she was talking to plaintiff about falling at home, he never told her that he had also fallen at work. Ms. Sharpe also testified that she sent plaintiff FMLA paperwork and instructed him to have his doctor complete the paperwork within 15 days and return it to her.
15. Ms. Sharpe testified the first time she became aware plaintiff was alleging he fell at work was when plaintiff was denied short-term disability. *Page 6 
16. After plaintiff missed several days of work Mr. Weatherman, plaintiff's supervisor, called to check on him. Plaintiff told Mr. Weatherman that he was getting his shoulder and knee x-rayed. Plaintiff stated he was getting treatment for his knee because "the soreness starting setting in on my knee later on." Plaintiff stated he was "getting his shoulder checked out because of a previous injury he had sustained before." He did not mention any falls at work.
17. On October 2, 2006, when completing short-term disability paperwork, the Physician's Assistant at Matthews Health Center indicated that plaintiff's fall on September 13, 2006, was secondary to his previous leg contusion on September 12, 2006. The Physician's Assistant noted that the leg contusion did not occur at work. The Physician's Assistant also noted that plaintiff could return to work full duty with no restrictions on November 1, 2006, based upon orthopedic recommendations.
18. Dr. Richard Rauck testified that plaintiff had been treating for right shoulder pain since 2003. On October 24, 2006, plaintiff told Dr. Rauck that he was involved in a fall and injured his right shoulder and right knee. Dr. Rauck testified that he did not recall if plaintiff told him anything else about the fall. Dr. Rauck ultimately testified plaintiff's shoulder problems after the fall at home "seemed basically the same" as the problems he had been experiencing prior to the fall. Dr. Rauck could not opine as to how plaintiff's right shoulder pain began.
19. Plaintiff also received medical treatment from Dr. J. Wayne Keeling at Rockingham Orthopedic Associates. Plaintiff reported to Dr. Keeling that he had an injury to his right knee at his home on September 12, 2006. Dr. Keeling noted plaintiff also hurt his right shoulder on that same date. These injuries occurred when plaintiff fell off the back of a truck at his home. There is no mention of a fall at work. *Page 7 
20. Plaintiff continued to treat with Dr. Keeling and on January 25, 2007, plaintiff told Dr. Keeling his knee was much improved. Dr. Keeling noted no effusion and also noted that plaintiff's gait and muscle strength were normal. Dr. Keeling also noted that plaintiff's right shoulder had full range of motion and no further pain. Plaintiff told Dr. Keeling that he could find a job. Dr. Keeling instructed plaintiff to return in six weeks, and that if he needed a work note, Dr. Keeling could provide him with one.
21. On March 28, 2007, plaintiff told Dr. Keeling that his shoulder and knee were better and that he was ready to go back to employment. Dr. Keeling noted that plaintiff's right shoulder and right knee were tender, but had full range of motion. At his deposition, Dr. Keeling testified he saw plaintiff again on June 13, 2007, but that he did not recommend surgery.
22. Plaintiff also reported to Dr. William L. Craig on October 4, 2006, that he injured his right knee and shoulder when he fell out of a truck bed. Dr. Craig's impression was knee pain/strain and right shoulder pain. Dr. Craig prescribed physical therapy and reported that plaintiff could return to work with restrictions. Plaintiff did not report any falls at work to Dr. Craig.
23. Plaintiff was also evaluated on October 10, 2006, by U.S. Health Works, the employer's provider. Contrary to the medical history he had given to his previous providers, plaintiff told the Health Works physician that he injured his right thigh while at work on September 12, 2006. The physician noted that plaintiff cringed with the slightest touch to any part of his knee. The physician also reported that plaintiff could not point to the spot that hurt worst on his knee, but rather grabbed his entire knee. He also would not bend his knee while on the exam table, but bent his knee when he sat in his chair. Consequently, the physician noted a positive Waddell's sign. The physician recommended continued treatment by Dr. Craig and *Page 8 
prescribed physical therapy. Plaintiff did not tell the providers at U.S. Health Works about his fall from the truck on September 12, 2006.
24. Plaintiff did return to light duty work for employer. J.C. Coggins testified that he worked at employer as a manufacturing supervisor. He became familiar with plaintiff when plaintiff was assigned to him to work light duty. Plaintiff was doing very light one-hand assembly work. Mr. Coggins testified that when plaintiff returned to work, he was still using crutches, but when plaintiff told Mr. Coggins that he was afraid of falling, employer made arrangements to provide plaintiff with a wheelchair.
25. Plaintiff was terminated by employer on October 30, 2006, because of unexcused absences. If plaintiff had pursued FMLA, his job would have been protected.
26. After his termination from employer, plaintiff returned to work at Harris Teeter, earning $8.00 per hour three days a week, for five hours a day. Plaintiff also testified that at the time of the hearing, he was currently employed at The Coliseum Motel working four days a week, earning $7.00 per hour.
27. Plaintiff did not produce any medical evidence that his alleged problems with his right shoulder and/or knee rendered him unable to find employment making the same or greater average weekly wage as he was earning at employer.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. In order for an employee to be entitled to workers' compensation benefits, he must prove that an injury by accident occurred, which arose out of and in the course and scope of *Page 9 
his employment. N.C. Gen. Stat. § 97-2(6). "Arises out of" refers to an injury that is a "natural and probable consequence" of the employment,Clark v. Burton Lines, 272 N.C. 433, 437 (1968), and there must be somecausal connection between the employment and the injury. Taylor v. TwinCity Club, 260 N.C. 435, 438 (1963); Cole v. Guilford County,259 N.C. 724,726-27 (1963). The injury must be peculiar to the job and not a common threat to the public generally. Sandy v. Stackhouse, Inc.,258 N.C. 194, 198 (1962). Based upon the competent evidence of record, plaintiff has not proven an accident occurred at work on September 13, 2006.
2. Based upon the competent evidence of record, plaintiff's injuries occurred at his home when he fell off a truck on September 12, 2006.
3. Pursuant to company policy, plaintiff was terminated from employer for unexcused absences. Plaintiff did not pursue leave from employer under the FMLA which would have protected his job.
4. Based upon the competent evidence of record, plaintiff has not proven that he was disabled and he could have maintained employment in some capacity.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission hereby enters the following:
 AWARD
1. Plaintiff's claim for benefits for his alleged injury by accident must be, and is hereby, DENIED in its entirety.
2. Each side shall bear its own costs.
 This the 23rd day of September 2008. *Page 10 
S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ CHRISTOPHER SCOTT COMMISSIONER *Page 1