***********
The undersigned have reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Hall and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Hall.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS a. That the parties are subject to the Act. *Page 2 
 b. That an Employment relationship existed between the parties at all relevant times.
 c. That the Employer was self-insured and Liberty Mutual was the Third Party Administrator.
 d. That for date of injury February 10, 2006, Plaintiff's average weekly wage was $637.42 and that Plaintiff's compensation rate, pursuant to N.C. Gen. Stat. § 97-1, et seq., would be $424.95.
 e. That for date of injury March 26, 2007, Plaintiff's average weekly wage and compensation rate, pursuant to N.C. Gen. Stat. § 97-1, et seq., shall be confirmed by a correctly completed Form 22.
 f. That Plaintiff injured his back in the course and scope of employment on February 10, 2006, which Defendant admits.
 g. That Plaintiff alleges he injured his back in the course and scope of employment on March 26, 2007, which Defendant denies.
 h. That the attached medical index reflects current medical records in this matter.
 i. That Plaintiff and Defendant reserve the right to have independent medical examinations.
 j. That Plaintiff has not worked since March 27, 2007 and temporary total disability benefits have not been paid for that time.
 k. That the parties agree that they will obtain all medical evidence by stipulation or deposition following the hearing.
 l. The parties contend the contested issues to be tried are: *Page 3 
 1. Did Plaintiff sustain a compensable injury in the course and scope of his employment on or about March 26, 2007?
 2. What, if any, are the compensable consequences of Plaintiff's March 26, 2007 injury by accident?
 m. Subsequent to the hearing before the deputy commissioner, the parties entered into a stipulation as to Plaintiffs average weekly wage of $742.07 and a compensation rate of $494.71 for the alleged accident of March 26, 2007.
 ***********
The following were marked and received into evidence as:
 EXHIBITS
1. Stipulated Exhibit 1 — Pre-trial agreement.
2. Stipulated Exhibit 2 — Medical records and I.C. forms.
3. Stipulated Exhibit 3 — Discovery responses and personnel file.
4. Stipulated Exhibit 4 — Plaintiff's time records.
 ***********
Based upon all of the competent evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, Plaintiff was 41 years old and a high school graduate. Plaintiff worked for several companies, including Sam's Club from 1993 until 2002, a landscaping lawn maintenance business for two years, and before that had been in the retail grocery business. *Page 4 
2. In 1992 or 1993, he had a workers' compensation claim when he worked at the Fresh Market when some racks of meat hit him in the neck. He also had an accident when he worked at Sam's Club when he fell in a cooler and hyper-extended his elbow.
3. Plaintiff started working for Defendant-Employer Stock Building Supply on or about March 3, 2004 and worked there until his last day on March 27, 2007. He was under short term disability for approximately six months after his last day of work and was terminated in September of 2007.
4. When he first started working for Defendant-Employer he was in the yard pulling orders of building supplies. After about six months, he moved into the warehouse where he unloaded and loaded delivery trucks. He was also a driver for a period of time.
5. Plaintiff had a prior accident with Defendant-Employer on February 10, 2006, when while delivering some cabinets into a house he tripped on some frozen mud and the weight of the cabinet injured his back. Plaintiff reported the accident to Defendant-Employer, filed a workers compensation claim, and received medical treatment. He did not miss any time from work. He was treated by Dr. Holly at Blue Ridge Bone and Joint until he was released to full-duty on April 3, 2006. He did not receive any impairment rating.
6. This claim arises out of Plaintiff's allegation that on Monday, March 26, 2007, he picked up a box containing computer paper that weighed roughly 35 to 50 pounds and loaded it into a machine. When he stood up after loading the paper, he felt a significant pain in his lower back. The pain was in the same area as his prior back problems.
7. Plaintiff testified that he informed his supervisor, Chris Chapman, that he thought he had pulled a muscle in his back and asked if he could work straight through lunch and leave early to see his doctor that afternoon. Plaintiff was allowed to do that. *Page 5 
8. Plaintiff did see his family doctor, Henry McDade, at North Buncombe Family Medicine on the afternoon of March 26, 2007. He returned to work the following day and told Mr. Chapman he was not doing any better and Mr. Chapman recommended a chiropractor that had treated him. Plaintiff went to see the chiropractor that day.
9. After returning from the chiropractor, he was having more back problems and was in extreme pain and could barely walk. He called his wife and told her to come get him and some co-workers helped him into their car. His wife took him to the emergency room.
10. Plaintiff was ultimately referred to a neurosurgeon, Dr. Richard Lytle, who found that Plaintiff had a ruptured disc and performed multiple surgeries on him. As of the date of hearing before the deputy commissioner, Plaintiff had undergone a discectomy on March 29, 2007 and a repeat discectomy on May 16, 2007.
11. On March 26, 2007, the day of the alleged at-work accident, Plaintiff sought treatment with Dr. McDade where he reported a two-week history of low back pain radiating down into his right leg. Dr. McDade reported that Plaintiff informed him there were no precipitating factors which caused the problem.
12. On March 27, 2007, the day following the alleged accident, Plaintiff treated at Siegel Chiropractic Center where he filled out a "patient health questionnaire" and signed the document. He indicated that he suffered from "extreme pain/tightness lower back right hip, buttocks to calf" and that his symptoms began "one and a one-half weeks ago." He also indicated that he did not know how the problem had begun and did not mark that it was the result of an on-the-job accident.
13. On March 27, 2007, Plaintiff went to the emergency room at Mission Hospital where the triage form indicates that Plaintiff complained of lower back, right hip and leg pain for *Page 6 
two weeks that worsened on March 23, 2007. Plaintiff denied any falls or injuries and reported that the pain started spontaneously, but continues to worsen.
14. On March 28, 2007, Plaintiff went to the emergency room at Mission Hospital where he was treated by Dr. Scott A. Ramming. Dr. Ramming noted that Plaintiff had experienced an exacerbation of back pain for the past two weeks and there was no specific injury or new activity that caused this pain.
15. On March 29, 2007, three days after the alleged accident, Plaintiff went to Mission Hospital and saw Dr. Lary Schulhof. Plaintiff complained of pain in the right lower back, right buttock and thigh. Plaintiff reported he had experienced back pain about a year prior, which resolved when treated conservatively, but returned two weeks prior and was constant and unrelenting.
16. On March 29, 2007, Plaintiff saw neurosurgeon Dr. Richard A. Lytle and reported back pain and weakness in his right leg for the last several weeks which had worsened acutely on March 23, 2007.
17. Mr. Chapman is the assistant manager of employer and in charge of all workers' compensation claims and is known to be a stickler for filing claims. Mr. Chapman testified that Plaintiff never reported a work injury to him.
18. Plaintiff did speak with Mr. Chapman on March 26 or 27, 2007 about some ongoing back pain Plaintiff had been experiencing, but never related it to anything occurring at work. Because of the way that Plaintiff described his back problems, Mr. Chapman thought that Plaintiff's condition was possibly connected to Plaintiff's prior claim from 2006. Mr. Chapman indicated he would have immediately assisted Plaintiff in filling out workers' compensation forms if Plaintiff had told Mr. Chapman that he had suffered an injury at work. *Page 7 
19. On November 24, 2007, Dr. Lytle completed a causation questionnaire which had been sent to him by Plaintiff's counsel. That questionnaire asked whether Plaintiff's condition was significantly caused, aggravated, exacerbated, or contributed to by his March 26, 2007 on-the-job injury. Dr. Lytle wrote that he did not have an opinion. At his deposition, Dr. Lytle reiterated that he could not give an opinion as to causation.
20. According to Dr. Lytle, Plaintiff's pathology and studies showed that Plaintiff had a new injury after the 2006 studies. He also testified that it was also difficult to tell the timing of when Plaintiff's back condition actually started or worsened and he had no way to tell the real cause of the herniation. He explained that the acute disc herniation he noted in Plaintiff's back is commonly caused by lifting but there are lots of causes for such an injury such as moving or lifting furniture, carrying boxes, carrying suitcases, sexual activity, and very often, it is something that the patient has done many times before and for whatever reason it starts to irritate the back.
21. Dr. Lytle opined that he did not believe that Plaintiff's current back condition related back to or represented a change of condition from Plaintiff's February 10, 2006 back injury.
22. Dr. McDade was asked at his deposition if he had an opinion as to whether or not the alleged accident on March 26, 2007 caused, aggravated, accelerated, exacerbated, or significantly contributed Plaintiff's back problems. Dr. McDade's response was vague and did not adequately address the causation issue. Dr. McDade opined that the fact that Plaintiff had experienced prior back problems put him at a higher risk for additional back problems. Dr. McDade's causation testimony is not sufficiently reliable to qualify as competent evidence on issues of medical causation. *Page 8 
23. The Full Commission finds that Dr. Lytle, as a result of his training and experience as well as his treatment of Plaintiff, was in the best position to address causation. The Full Commission assigns greater weight to the testimony provided by Dr. Lytle over the testimony of Dr. McDade.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for an employee to be entitled to workers' compensation benefits, he must prove that an injury by accident occurred, which arose out of and in the course and scope of his employment. N.C. Gen. Stat. § 97-2(6). "Arises out of" refers to an injury that is a "natural and probable consequence" of the employment, Clark v. Burton Lines, 272 N.C. 433, 437 (1968), and there must be some causal connection between the employment and the injury. Taylor v. Twin City Club,260 N.C. 435, 438 (1963). Based upon the competent evidence of record, plaintiff failed to prove that he suffered an at-work injury on March 26, 2007, that arose out of and in the course and scope of his employment with Defendant-Employer. Id.
2. In addition to proving there was an injury by accident arising out of and in the course and scope of his employment, Plaintiff must also show that the current medical condition he is suffering from is causally related to the work-related accident. Parsons v. Pantry,Inc., 126 N.C. App. 540, 542, 485 S.E.2d 867, 869 (1997). The North Carolina Supreme Court has held that "in cases involving complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury."Holley v. ACTS, Inc.,357 N.C. 228, 232, 581 S.E.2d 750, 752 (2003). Plaintiff *Page 9 
failed to demonstrate through expert medical testimony that his back problems were causally related to his employment or the alleged March 26, 2007 injury at work. Id.
3. "A change of condition `refers to conditions different from those' in existence when an award was originally made. . . ."Lewis v. Craven Regional Med. Center,122 N.C. App. 143, 149, 468 S.E.2d 269, 274 (1996). "[T]he burden is on the party seeking the modification to prove the existence of the new condition and that it is causally related to the injury that is the basis of the award the party seeks to modify." Blair v.American Television Communications Corp.,124 N.C. App. 420, 423, 477 S.E.2d 190, 192 (1996). An employee satisfies this burden by producing medical evidence showing "he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment." Russell v. Lowes ProductDistrib., 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Plaintiff failed to demonstrate through expert medical testimony that his back problems represented a change of condition causally related to his February 10, 2006 injury at work. Id.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for benefits for his alleged March 26, 2007 injury by accident is hereby DENIED.
2. Plaintiff's claim for change of condition from his February 10, 2006 injury by accident is hereby DENIED.
3. Each side shall bear its own costs.
This the 11th day of August 2009. *Page 10 
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ DANNY L. McDONALD COMMISSIONER